173302

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

PATRICIA CASTAGNA and NICK SARRACCO,          **COMPLAINT**

                                   Plaintiffs,     09 CIV 9332 (JGK)

          - against -                              *ECF CASE*

BILL LUCENO and MAJESTIC KITCHENS, INC.,          **JURY TRIAL**
                                                   **IS DEMANDED**
                                   Defendants.
-------------------------------------------------------------------X

          Plaintiffs, by their attorneys, Reisman Peirez & Reisman, L.L.P., as and for

their Complaint against the above-named defendants, allege as follows:

### INTRODUCTORY STATEMENT

          1.     This is an action by Patricia Castagna and Nick Sarracco against

their former employer, Majestic Kitchens, Inc., and its owner, Bill Luceno, for

employment discrimination on account of sex,  age, and retaliation, pursuant to Title VII

of the Civil Rights Act of 1964, as amended ( 42 U.S.C. § 2000e *et seq.*); 42 U.S.C.

§ 1981; and New York State *Executive Law* and *Labor Law* for violation of applicable

Federal and New York state benefit and labor law, and for violation of various common

law duties.

### JURISDICTION AND VENUE

          2.     The jurisdiction of the Court is predicated on 28 U.S.C. § 1331,

42 U.S.C. § 1331, 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1343(a).  Plaintiffs invoke

173302

the supplemental jurisdiction of this Court to consider related claims under statutory and common law of New York State pursuant to 28 U.S.C. § 1367. This action is brought after timely filing of Complaints with the U.S. Equal Opportunity Commission and receipt of a "right to sue letter". Plaintiff Patricia Castagna filed her Complaint with the EEOC on or about October 21, 2008 and received a "right to sue" letter dated August 14, 2009. Plaintiff Nick Sarracco filed his Complaint with the EEOC on or about September 12, 2008 and received a "right to sue" letter dated August 21, 2009.

3.    The proper venue of this action is in this Court as plaintiffs were working in and are residents of this State and the improper treatment alleged herein occurred at the business address of defendants within the State and all within the Southern District of New York.

## PARTIES

4.    Patricia Castagna, a plaintiff herein, is now, and at all times material and relevant to this action was, a resident of Port Chester, New York. She is an American Caucasian female who was born in 1949.

5.    Nick Sarracco, a plaintiff herein, is now, and at all times material and relevant to this action was, a resident of Port Chester, New York. He is an American Caucasian male who was born in 1964.

6.    Bill Luceno, a defendant herein, is the owner and President of Majestic Kitchens, Inc. (hereinafter "Majestic" or the "Company"). Luceno, at all times

173302

material and relevant, conducted and controlled the Company's business from its location in Mamaroneck, New York.

7.      Majestic Kitchens, Inc., a defendant herein, is a New York Corporation, registered with the New York Department of State, Division of Corporations on January 18, 1995 to do business in the state of New York with its headquarters and business location is in Mamaroneck, New York. At the time of plaintiffs' firing, the Company had no less than 35 employees and approximately $10 million in annual sales.

## FACTUAL BACKGROUND

### A.    *Patricia Castagna*

8.      Plaintiff, Patricia Castagna ("Castagna"), who is an American female in the protected age category, was asked by Bill Luceno ("Luceno") to work for his Company, and she began working there on April 1, 2005.

9.      On July 9, 2008, after verbal and physical assaults by Luceno, Castagna finally was forced to quit her employment as a result of an intolerable discriminatory work environment, other forms of harassment, assault, battery, defamation and retaliation for complaining about her mistreatment. These conditions and hostile working environment, which escalated to the point of Castagna being fearful for her safety, made it unreasonable for her to continue in her employment and resulted in what amounted to a de facto or constructive discharge.

173302

10.     Almost from the inception of her employment and continuing throughout the remainder of her employment, Castagna witnessed and was subjected to a regular, frequent, unwanted, and abusive pattern of behavior directed against her and particularly other women, in contrast to male employees, as well as a working environment characterized by lewd, racial and sexual comments and innuendos, slander, profanity, offensive physical contact and other inappropriate and discriminatory behavior by Luceno, who controlled the management of the Company.

11.     With a starting salary of $15 per hour, Castagna was first assigned to work for Mr. Jose Purekal, the business comptroller at Majestic, as she used various computer programs to sort and scan bills, enter information into Quick Books, and write checks.  She received favorable comments with respect to her work.

12.     Four or five months later, Castagna was transferred by Luceno to assume the position of the front desk receptionist.

13.     Doing more than simply meeting and greeting people, Castagna was responsible for answering more than 200 telephone calls per day and doing monthly sales reports.  Castagna also typed all the contracts for Majestic, opened the mail, stamped and alphabetized it.  She made sheets of address labels for customer mailings, kept track of all attendance and documented when and if designers were with customers.  Castagna also typed personal letters, and multiple party address labels for Luceno.

14.     Luceno made it a practice of principally hiring friends, relatives, and those known to friends.  When it came to policies and practices, nothing was in writing

173302

with respect to any rules, regulations and policies on vacation time, sick time, break notices, raises, lunch time, disciplinary policies, *etc*. No official posters were hung with respect to minimum wage or labor law provisions. What little was done, was done at Castagna's urging.

15.     Upon information and belief , Luceno has a habit of misclassifying employees as independent contractors, apparently for tax reasons and to avoid legal requirements, all to the financial benefit of himself and his family.

16.     As a result of Castagna's contending that Luceno and the Company should comply with the laws, she was ridiculed by him and referred to as "Ms. Corporation."

17.     After one year with Majestic, Castagna received a $1.00 per hour raise with no raise for the next year.  Thereafter, Luceno gave Castagna a $4.00 raise to $20.00 per hour, admitting that she was underpaid.  As was his customary practice, he swore that if Castagna talked to anyone about this raise that she would be fired.

18.     As was customary of Luceno's treatment of women as opposed to male employees, Luceno made incessant personal complaints about Castagna to others. Topics included Castagna's laughing, her voice, her breathing too loud, her coffee breaks and her bathroom breaks.

19.     Luceno constantly complained about Castagna's need to go to the bathroom, repeatedly screaming that she would "pee too much." He insisted that she take the time that she used in the bathroom from her allotted lunch time. For example, he

173302

informed her that if she needed to take two "pee breaks" during the day that he was going to cut her lunch time in half. Accordingly, she was forced to schedule her bathroom requirements at 11 AM, during her 1:30 PM lunch break and at 3:30 PM, but then only if someone was available to cover her desk. Otherwise, she had to wait until after 5 PM when she left work and was on her own time to use the bathroom. In reality, each bathroom break took all of three to four minutes. The situation with respect to bathroom breaks was particularly difficult and humiliating for her as Luceno was always complaining about what he referred to as her "pee breaks".

20.     Customers and co-workers were appalled at Luceno's treatment of her. As an example, while Castagna was greeting new customers one day who told her a joke, she laughed. Within 20 seconds her phone rang and she was berated and told that it sounded like a bunch of kindergarteners at the front desk. Customers knew what transpired and asked her if she was ok and what had happened. Despite her telling the customers that everything was fine, they had overheard Luceno yelling at her from the corner office. The customers expressed their sorrow at this and stated that she didn't deserve to be treated so rudely.

21.     Some customers were leery about doing business with Luceno. One female customer, after overhearing one of his screaming tirades, identified herself as a psychiatrist and told Castagna to mark her words, that he would go too far one day and hurt someone. She called him a walking time bomb.

- 6 -

173302

    22.    Luceno directed his harsh comments and the treatment towards the women employees of Majestic, in contrast to male employees, and frequently used sexual and ethic slurs.

    23.    One example involved an employee, Ms. Linda Fabbri. Within two or three weeks of beginning her employment, Luceno directed his anger at her in a manner that appalled virtually all of the other employees. He was furious because she took two weeks off for her honeymoon. He wanted her to cancel it and work instead. She was married on a Saturday and he directed employees to work, instead of attending the marriage ceremony and reception  He yelled at her so intensely, again sometimes in front of customers, to the point that Castagna felt that he was going to have a heart attack.

    24.    Another particularly intense example of Luceno's anger took place in May of 2008 and was directed at Ms. Celia Muff.  She was covering Castagna's desk during her morning bathroom break and apparently lost an important phone call for Luceno.  He blew up and yelled and swore for all to see.  Later, after lunch, Luceno went to Ms. Muff's office and started yelling again at her. Towards the end of the day Castagna noticed that Ms. Muff went into Luceno's office.  So scared at his violent behavior and worried about Ms. Muff, Castagna waited in her car from 5 pm until 5:30 to see how she was.  The next day it was announced that Ms. Muff had quit and would not be returning to Majestic.

173302

25.     Luceno's anger directed at women, did not exclude his wife, Sonia Luceno, who also worked at Majestic. He has been known to throw a coffee mug at her, which narrowly missed her, shattering on the wall and flying all over the place.

26.     The last straw for Castagna when it came to Luceno's verbal and physical assaults was on July 9, 2008. At 11:45 AM Luceno came to the receptionist's desk and asked her to shorten her lunch time to 30 minutes for the entire week because Majestic was short-handed and he wanted her to watch the telephones. Expecting that he would not provide for overtime for the extra two hours she would be working, Castagna nicely asked him if she could leave early and take comp time. He started yelling at her in a voice that all could hear throughout the showroom. He walked back to his office, still yelling. Twenty minutes later, Luceno returned, screaming as he called her "Ms. Corporate" and yelling that she was selfish. At this point he reached over her desk and shoved her computer monitor at her. She managed to catch it, exclaiming "Are you crazy?" By way of purported justification, he brought up the incident where she asked to take the day of July 3 off where she suggested that he pay an available person an extra hour. He proceeded to scream at her, swearing that that was not enough notice. He further threatened Castagna by saying that she should wait to see what would happen the next time she would ask for a day off. When she told him that all that was at issue was one hour of overtime, Luceno blew up. This time Castagna feared for her personal and physical safety. She felt scared, alone, humiliated, embarrassed and really upset at his treatment of her. Not knowing what he would do to her during the next tirade and

- 8 -

173302

assault, Castagna packed up her items and left. Fearful for her safety, she was forced to quit.

27. After the above-described incident, Castagna drove to fellow employee Nick Sarracco's home. Nick Sarracco had seen part of the screaming incident earlier in the day. After he suggested that she fill out a police report, they went to the Mamaroneck Police station where she filed a report describing the conditions of her employ and what had transpired that day. Nick Sarracco was subsequently fired for assisting her in this. Upon information and belief, after Castagna's departure from her employment, Luceno told other employees, so as to intimidate them, that she was dead in his mind for going to the police station, that the police were his friends, and it would be useless to seek help from them.

28. Castagna endured Luceno's abuse and mistreatment because she needed the income provided by the Company. The experience has left Castagna emotionally traumatized and depressed. To date, Castagna has not been able to find suitable re-employment.

29. The discrimination and retaliation described above are ongoing as a continuing violation of applicable civil rights laws.

30. Timely representative charges of discrimination, sexual discrimination, age discrimination, harassment, sexual harassment and retaliation were filed with the Equal Employment Commission ("EEOC") on or about October 21, 2008.

173302

31.     Castagna received a "Notice of Right to Sue" from the EEOC dated
August 14, 2009.

32.     The Complaint in this matter was filed within 90 days following the
receipt of the "Notice of Right to Sue."

33.     By the acts and conduct described above, the Company, its owner,
officers and employees named herein, intended to cause Castagna severe emotional
distress, or they acted in reckless disregard for the fact that their action would and did
cause Castagna's injury.

34.     Castagna suffered severe emotional and mental distress as a direct
and proximate result of the conduct of the Company, Luceno, officers and employees
named herein.

35.     The acts and conduct of the Company, Luceno, its officers and
employees named herein constitute extreme and outrageous conduct beyond the bounds
of common decency.

36.     Castagna has lost wages and other benefits, suffered embarrassment
and humiliation and her career has been irreparably damaged as a result of the conduct of
the Company, Luceno, its officers and employees named herein.

37.     Castagna has suffered loss of enjoyment of life, inconvenience and
pecuniary losses as a direct result of their conduct.

38.     The aforesaid pattern of harassment, discrimination, assault and
battery, demeaned Castagna both personally and professionally, caused her mental

- 10 -

173302

anguish, anxiety and humiliation, caused her physical and emotional injury (including

loss of self-esteem and loss of enjoyment of life) and resulted in a loss of benefits and

income, as well as out of pocket losses incurred by Castagna.

39.     The aforesaid pattern of defamation consisting of untrue statements,

some of which were defamatory, per se, harmed Castagna both personally and

professionally, caused her mental anguish, anxiety and humiliation, caused her physical

and emotional injury (including loss of self-esteem, loss of enjoyment of life, and loss of

esteem by others) and resulted in specific damages incurred by Castagna.

40.     Such defamation could have been obviated altogether, but for the

reckless disregard for her safety and propriety that the Company, Luceno, its officers and

employees exhibited in terms of their governance of behavior in the workplace.

**B.     _Nick Sarracco_**

41.     Plaintiff, Nick Sarracco ("Sarracco"), who is a Caucasian American,

began working for the Company in December of 1996.

42.     Luceno received a letter sent by Sarracco's lawyer dated July 12,

2008 complaining about (a) mischaracterizing Sarracco and other employees as

independent contractors and placing him on and off the books as an employee, (b) the

matter of a retirement package that Luceno previously assured Sarracco was his in the

approximate amount of $100,000 which funds had apparently not been properly qualified

under applicable law, nor ever paid over to Sarracco, and (c) other civil rights violations

173302

including that are described hereinabove with respect to Castagna. Thereafter Sarracco was fired.

43. Sarracco was forced to work in an intolerable discriminatory work environment in violation of civil rights, labor, retirement, and tax laws. He was retaliated against and fired for questioning and complaining thereof.

44. Almost from the inception of his employment and continuing throughout the remainder of his employment, Sarracco witnessed regular, frequent, unwanted, and abusive pattern of behavior directed against him and others, as well as a working environment characterized by lewd, racial and sexual comments and innuendos, slander, profanity, offensive physical contact and other inappropriate behavior by Luceno who controlled the management of the Company.

45. Throughout his tenure, Sarracco witnessed Luceno's habit of making derogatory comments about Jewish people, engage in other racial and ethnic stereotyping and engage in abusive treatment towards women.

46. For example, throughout his tenure Sarracco was singled out and treated differently than others by Luceno by reason of his ethnic background and age.

47. Luceno has repeatedly called him "a wise guy"; a term that carries with it negative aspersions to the Mob.

48. In the presence of others, Luceno repeatedly slandered and embarrassed Sarracco by saying that he was not a good worker and that he had bad habits. He went so far as to tell others that Sarracco was fired, when this was not the case.

173302

49.     Luceno denied Sarracco vacation time that others were permitted.

50.     Luceno retaliated against Sarracco by taking away his assistant and office space with the result that he was overloaded with work that could not be fulfilled.

51.     Finally, Luceno retaliated against Sarracco and fired him for his support of and assistance to a fellow worker, Castagna, when and after Luceno became verbally abusive, violent and assaulted her. In addition to the incidents described with respect to Castagna, Sarracco is aware of other incidents with customers and others that demonstrate  Luceno's history and pattern of becoming uncontrollably violent, to the point sometimes of having to be restrained.

52.     When Sarracco heard the noise attendant to Luceno's abuse and assault of Castagna, Sarracco confronted  him and he stopped the confrontation.

53.     After the incident, Sarracco accompanied Castagna to the police department where she filed a police report. Sarracco was retaliated against for his assistance of Castagna and the filing of a police report.

54.     During his tenure at the Company, Sarracco was placed on and off the books. He began working in September 1996 as a salesman and then left two months later as the Company's computer system was inadequate. He was hired back in December of 1996. Expected to work a 40-hour week and handle nothing other than Company work, the Company and Luceno made it a practice to classify him and others as "independent contractors." Periodically, Sarracco was placed "on the books" as an employee, such as in 2002 when he made a request to participate in a 401(k) program and was not allowed

173302

to do so.  While Sarracco was paid on a commission basis, Luceno and the Company withheld commissions on overage of contracts originated by Sarracco. Upon information and belief, Sarracco was shorted approximately $100,000 in commissions during his tenure working for defendants.

55.    Luceno insisted that Sarracco sign a waiver to the effect that he had been offered medical insurance but declined. However, Sarracco refused to sign the waiver.   In point of fact, Sarracco was never offered medical insurance.

56.    In 2003, Sarracco was taken off the books again.

57.    In 1997, Sarracco was promised by Luceno that the Company would fund his retirement in the amount of $700 per month or $8,400 per year. He was told that he was entitled to this retirement as others got a car allowance and as a result of the requirement that he help other Company employees with their kitchen design skills.

58.    On an annual basis, typically around the Christmas holiday, Luceno would take out a sheet of paper and show Sarracco the value of the retirement account, telling him that the account earned no interest and that if Sarracco ever made an official inquiry into this matter, that it would be denied that he had any retirement whatsoever.

59.    To date, Luceno and Company have refused to turn over the retirement pay to Sarracco or his designee.

60.    Sarracco endured defendants' abuse and mistreatment because he needed the income provided by the Company.  To date, Sarracco has not been able to find suitable re-employment.

173302

61.    The discrimination and retaliation described above are ongoing as a continuing violation of applicable civil rights laws, wage, benefit and labor laws.

62.    Timely representative charges of discrimination, sexual discrimination, age discrimination, harassment, sexual harassment and retaliation were filed with the Equal Employment Commission ("EEOC") on or about September 12, 2008.

63.    Sarracco received a "Notice of Right to Sue" from the EEOC dated August 21, 2009.

64.    The Complaint in this matter was filed within 90 days following the receipt of the "Notice of Right to Sue."

65.    Sarracco has also filed complaints with the US Department of Labor and New York State Department of Labor.

66.    The acts and conduct of the Company, Luceno, its officers and employees named herein constitute extreme and outrageous conduct beyond the bounds of common decency.

67.    Sarracco has lost commissions, wages and other benefits, suffered embarrassment and humiliation and his career has been irreparably damaged as a result of the conduct of the Company and Luceno.

68.    Sarracco has suffered loss of benefits and income, enjoyment of life, inconvenience and pecuniary losses as well as out of packet losses incurred by Sarracco as a direct result of defendants' conduct.

173302

69.     The aforesaid pattern of defamation consisting of untrue statements, some of which were defamatory, per se, harmed Sarracco both personally and professionally, caused him mental anguish, anxiety and humiliation, (including loss of self-esteem, loss of enjoyment of life, and loss of esteem by others) and resulted in specific damages incurred by Sarracco.

70.     Such defamation could have been obviated altogether, but for the reckless disregard for her safety and propriety that the Company, Luceno, its officers and employees exhibited in terms of their governance of behavior in the workplace.

71.     In retaliation for Sarracco's support of Castagna, Luceno and Company have deprived him of benefits due and owing to him including retirement funds approximating and commissions.

<u>COUNT I</u>

**SEXUAL DISCRIMINATION IN VIOLATION OF
TITLE VII OF THE U.S. CIVIL RIGHTS ACT**
***Castagna v. Luceno and Majestic***

72.     Castagna realleges paragraphs 1 to 44 and incorporates them by reference as paragraphs 1 to 44 of Count I of this Complaint.

73.     Title VII of the Civil Rights Act of 1964, 24 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII") makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of gender or sex.

74.     Castagna is female.

173302

75.     Harassment directed at members of the opposite sex creates and abusive and hostile work environment such that the conditions of employment are altered. It is actionable under Title VII as sexual or gender-based discrimination.

76.     Luceno and Company are liable for the discrimination alleged herein with Luceno being individually liable and the Company assuming liability under the doctrine of *respondeat superior*. Luceno has a particular problem with women, as detailed herein.  Moreover, the Company is strictly liable for the acts of its supervisory employees because Luceno used his actual or apparent authority to further the unlawful conduct otherwise aiding in accomplishing the unlawful conduct by the existence of an agency relationship.

77.     The Company is liable for the acts of Luceno because the Company provided no reasonable avenue of complaint.

78.     The Company is liable for the acts alleged herein because the Company's top echelon consisted of Luceno who established the corporate culture at the Company which encouraged sexual discrimination and harassment.

79.     The hostile work environment was sufficiently severe and pervasive such that it altered the condition of Castagna's employment, affected the terms, conditions and privileges thereof in violation of Title VII, and resulted in Castagna's constructive discharge or forced resignation from her position.

173302

80.     Based upon the foregoing, Luceno and the Company have discriminated against Castagna on the basis of her sex and have deprived her of her rights in violation of Title VII of the Civil Rights Act of 1964, 42. U.S.C. § 2000e *et seq.*

81.     As a result of such conduct by Luceno and the Company, Castagna has suffered damages and is entitled to back pay, front pay, and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Castagna as a consequence of Luceno and the Company's illegal conduct.

82.     Because Luceno and the Company's discriminatory treatment of Castagna was willful and/or in reckless disregard of her federally-protected rights, due to which Castagna is entitled to an award of punitive damages against defendants.

## COUNT II

### RETALIATION IN VIOLATION OF
### TITLE VII OF THE U.S. CIVIL RIGHTS ACT
### *Castagna v. Luceno and Majestic*

83.     Castagna realleges paragraphs 1 to 44 and incorporates them by reference as paragraphs 1 to 44 of Count II of this Complaint.

84.     Title VII, specifically 42 U.S.C. § 2000e-3, makes it unlawful for an employer to discriminate against an employee who has opposed an unlawful employment practice or has assisted or participated in another's claim of discrimination.

85.     Luceno and the Company retaliated against Castagna for her complaints in violation of the anti-retaliation provisions of Title VII. By its conduct, the Company subjected Castagna to unlawful retaliation in violation of Title VII.

173302

86.    As a result of such conduct by Luceno and Company, Castagna has suffered damages and is entitled to back pay, front pay , and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Castagna as a consequence of Luceno and the Company's illegal conduct.

87.    Because Luceno's and the Company's retaliatory treatment of Castagna were willful and/or in reckless disregard of Castagna's federally-protected rights, Castagna is entitled to an award of punitive damages against Luceno and the Company.

### COUNT III

**DISCRIMINATION IN VIOLATION OF
A CITIZEN'S EQUAL RIGHTS
Under 42 U.S.C. § 1981**
*Castagna v. Luceno and Majestic*

88.    Castagna realleges paragraphs 1 to 44 and incorporates them by reference as paragraphs 1 to 44 of Count III of this Complaint.

89.    By their actions detailed above, Luceno and the Company's conduct towards Castagna constitutes an infringement of her rights to make and enforce contracts and to the full and equal benefit of all laws and proceedings for the security of persons and property in violation of 42 U.S.C. § 1981.

90.    As a result of Luceno's and the Company's discriminatory conduct, Castagna has suffered substantial damages, including emotional distress, in an amount as yet undetermined.

173302

91.     Luceno's and the Company's discriminatory conduct was taken with malice and/or reckless indifference to Castagna's rights.  Castagna is therefore entitled to punitive damages.

92.     By reason of the foregoing, Luceno and the Company are liable to Castagna for back pay, front pay or reinstatement, compensatory damages, punitive damages, pre-judgment interest, attorneys' fees and costs.

## COUNT IV

### DISCRIMINATION IN VIOLATION OF AGE DISCRIMINATION U.S. AGE DISCRIMINATION IN EMPLOYMENT ACT
### *Castagna v. Luceno and Majestic*

93.     Castagna realleges paragraphs 1 to 44 and incorporates them by reference as paragraphs 1 to 44 of Count III of this Complaint.

94.     The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, as amended by The Older Workers Benefit Protection Act (Pub. L. 101-433) and as amended by § 115 of the Civil Rights Act of 1991 (P.L. 102-166)  makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of such individual's age.

95.     Castagna is over 40 years of age and is in the protected age category.

96.     Luceno and Company are liable for the discrimination alleged herein with Luceno being individually liable and the Company assuming liability under the doctrine of respondeat superior. Moreover the Company is strictly liable for the acts of its supervisory employees because Luceno used his actual or apparent authority to further

- 20 -

173302

the unlawful conduct other wising aiding in accomplishing the unlawful conduct by the existence of an agency relationship.

97.     The Company is liable for the acts of Luceno because the Company provided no reasonable avenue of complaint.

98.     The Company is liable for the acts alleged herein because the Company's top echelon consisted of Luceno, who established the corporate culture at the Company which encouraged sexual discrimination and harassment.

99.     The hostile work environment was sufficiently severe and pervasive such that it altered the condition of Castagna's employment, affected the terms, conditions and privileges thereof in violation of ADEA.

100.    As a result of such conduct by Luceno and the Company, Castagna has suffered damages and is entitled to back pay, front pay, and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Castagna as a consequence of Luceno and the Company's illegal conduct.

101.    Because Luceno and the Company's discriminatory treatment of Castagna was willful and/or in reckless disregard of her federally-protected rights, due to which Castagna is entitled to an award of punitive damages against defendants.

173302

## COUNT V

### VIOLATION OF NEW YORK LAW
### SEXUAL, AGE DISCRIMINATION and RETALIATION
### *Castagna v. Luceno and Majestic*

102.    Castagna realleges paragraphs 1 to 44 and incorporates them by

reference as paragraphs 1 to 44 of Count V of this Complaint.

103.    New York State *Executive Law*, § 290, *et seq.* ("Human Rights

Law"), makes it unlawful to discriminate against any individual in the terms conditions,

or privileges of employment on the basis of sex and who are retaliated against for

complaining about the terms of their employment. This creates an abusive and hostile

work environment such that the conditions of employment are altered. The same legal

standards that apply to Title VII claims apply to claims brought under the Human Rights

Law.

104.    The Human Rights Law, as amended, makes it unlawful in New

York for a resident person or domestic corporation to violate any provisions of the

Human Rights Law.

105.    The Company is authorized to do business in the State of New York

and its principal place of business is located there.

106.    Luceno and the Company aided and abetted in the unlawful conduct,

as alleged herein, and actually participated in the conduct giving rise to the discrimination

claims.

173302

107.    Company management is liable because Luceno, as such, had the power to hire and fire Company employees and aided and abetted the discriminatory acts, as alleged herein.

108.    As a result of such conduct by Luceno and the Company, Castagna has suffered damages and is entitled to back pay, front pay, and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Castagna as a consequence of their illegal conduct which includes sexual discrimination, age discrimination and retaliation for Castagna's assertion of her rights.

109.    Because Luceno's and the Company's treatment of Castagna was willful and/or in reckless disregard of Castagna's State-protected rights, due to which Castagna is entitled to an award of punitive damages against Luceno and Company.

## COUNT VI

### VIOLATION OF NEW YORK LABOR LAW
### *Castagna v. Luceno and Majestic*

110.    Castagna realleges paragraphs 1 to 44 and incorporates them by reference as paragraphs 1 to 44 of Count VI of this Complaint.

111.    New York State *Executive Law* and *Labor Law* make it unlawful for an employer not to post policies with respect to sick leave, vacation, personal leave, holidays and work days; require proper written notice of firing; and *Labor Law* § 215 provides for penalties and civil actions upon employers who penalize employees because of complaints of employer violations.

173302

112.    As a result of the conduct complained of herein by Castagna, Luceno and Majestic have violated the terms of New York State's *Executive Law* and *Labor Law*.

113.    In accordance with *Labor Law* § 215, Castagna is entitled to bring a civil action thereunder because she has complained to Luceno and Company, and is entitled to all appropriate relief, including rehiring or reinstatement with restoration of seniority, payment of lost compensation, damages, and reasonable attorneys' fees.

114.    In accordance with New York *Labor Law* § 215's terms, notice of this action has been served upon the New York Attorney General by delivery of this Complaint.

## COUNT VII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### IN VIOLATION OF NEW YORK COMMON LAW
### *Castagna v. Luceno and Majestic*

115.    Castagna realleges paragraphs 1 to 44 and incorporates them by reference as paragraphs 1 to 44 of Count VII of this Complaint.

116.    New York law recognizes a cause of action for intentional infliction of emotional distress, which makes unlawful certain extreme and outrageous conduct, including harassment and the other actions alleged herein, that results in severe emotional distress and was intended or committed with a disregard for a substantial probability of causing such distress.

173302

117.   By his actions alleged herein Luceno maliciously embarked on a course of conduct, willfully and intentionally causing Castagna severe emotional distress without any just cause or provocation in violation of State law.

118.   The Company directed, encouraged, and participate in the wrongful conduct alleged herein.

119.   As a result of defendants' conduct, Castagna has become tense, nervous, irritable, depressed and has suffered great mental anguish that has included a great deal of mental and physical suffering and inconvenience.

120.   Because defendants' treatment of Castagna was willful and/or in reckless disregard of Castagna's common law rights due to which Castagna is entitled to an award of punitive damages against defendants.

## COUNT VIII

### ASSAULT IN VIOLATION OF NEW YORK COMMON LAW
### *Castagna v. Luceno and Majestic*

121.   Castagna realleges paragraphs 1 to 44 and incorporates them by reference as paragraphs 1 to 44 of Count VIII of this Complaint.

122.   New York common law provides a cause of action for assault which consists of the intentional placing of another party in fear of imminent harmful or offensive contact.

123.   Luceno's actions described herein caused Castagna to suffer physical assault in violation of State law.

173302

124.    Given the Company's knowledge of Luceno's hostile behavior directed against Castagna and others, defendants could have reasonably anticipated and could have prevented such an assault.

125.    As a result of defendants' conduct, Castagna was placed in fear of imminent harmful or offensive contact .

126.    Defendants' treatment of Castagna was in gross and egregious disregard for the consequences for the invasion of Castagna's common law rights due to which Castagna is entitled to an award of punitive damages against defendants.

## COUNT IX

### BATTERY IN VIOLATION OF NEW YORK COMMON LAW
### *Castagna v. Luceno and Majestic*

127.    Castagna realleges paragraphs 1 to 44 and incorporates them by reference as paragraphs 1 to 44 of Count IX of this Complaint.

128.    New York common law provides a cause of action for battery. Battery consists of the intentional physical contact upon a party without that party's consent.

129.    Luceno's actions described herein caused Castagna to suffer battery in violation of State law.

130.    Given the Company's knowledge of Luceno's hostile behavior directed against Castagna and others, defendants could have reasonably anticipated and could have prevented such battery.

173302

131.   As a result of defendants' conduct, Castagna suffered such offensive physical contact without her consent.

132.   Defendants' treatment of Castagna was in gross and egregious disregard for the consequences for the invasion of Castagna's common law rights due to which Castagna is entitled to an award of punitive damages against defendants.

## COUNT X

### DEFAMATION AND/OR INTENTIONALLY MAKING A FALSE IN VIOLATION OF NEW YORK COMMON LAW
#### Castagna v. Luceno and Majestic

133.   Castagna realleges paragraphs 1 to 44 and incorporates them by reference as paragraphs 1 to 44 of Count X of this Complaint.

134.   New York common law provides a cause of action for intentionally making a false statement. This consists of a false and misleading statement that was uttered or published maliciously and with intent to harm another or done recklessly and without regard to the consequences where a reasonably prudent person would or should anticipate that damage.

135.   The publication by Luceno of statements referred to hereinabove about Castagna was false and misleading. They were published maliciously and with intent to harm Castagna, or done recklessly without regard to the consequences.  In this case a reasonably prudent person would or should anticipate that damage.

173302

136.    The statements were made with knowledge that they were false and actual and common law malice for the purpose of demeaning, damaging, and destroying Castagna's reputation and impeding her progress at the Company.

137.    Castagna has suffered specific monetary loss as a result of the false statements which were intentionally made, resulting in damage to her reputation and preventing her promotion at the Company all to her damage and in an amount to be determined at trial.

138.    The Company is liable under the theory of respondeat superior and or/alter ego of Luceno.

139.    Defendants' treatment of Castagna in publishing these intentionally false statements was motivated by actual malice and was wrongfully intended to injure Castagna, due to which Castagna is entitled to an award of punitive damages against defendants.

## COUNTS AS TO SARRACCO

### COUNT XI

#### RETALIATION IN VIOLATION OF
#### TITLE VII OF U.S. CIVIL RIGHTS ACT
#### *Sarracco v. Luceno and Majestic*

140.    Sarracco realleges paragraphs 45 to 75 and incorporates them by reference as paragraphs 45 to 75 of Count XI of this Complaint.

173302

141.   Title VII, specifically 42 U.S.C. § 2000e-3, makes it unlawful for an employer to discriminate against an employee who has opposed an unlawful employment practice or has assisted or participated in another's claim of discrimination.

142.   Luceno and the Company retaliated against Sarracco for his complaints over Luceno's behavior generally, and specifically with respect to his treatment of Castagna wherein Sarracco came to the assistance of Castagna, in violation of the anti-retaliation provisions of Title VII.  By its conduct, the Company subjected Sarracco to unlawful retaliation in violation of Title VII.

143.   As a result of such conduct by Luceno and Company, Sarracco has suffered damages and is entitled to back pay, front pay , and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Sarracco as a consequence of Luceno and the Company's illegal conduct.

144.   Because Luceno's and the Company's retaliatory treatment of Sarracco was willful and/or in reckless disregard of Sarracco's federally-protected rights, due to which Sarracco is entitled to an award of punitive damages against Luceno and the Company.

## COUNT XII

### DISCRIMINATION IN VIOLATION OF A CITIZEN'S EQUAL RIGHTS
#### Under 42 U.S.C. § 1981
#### *Sarracco v. Luceno and Majestic*

145.   Sarracco realleges paragraphs 45 to 75 and incorporates them by reference as paragraphs 45 to 75 of Count XII of this Complaint.

173302

146.   By their actions detailed above Luceno and the Company's conduct towards Sarracco constitutes an infringement of his rights to make and enforce contracts and to the full and equal benefit of all laws and proceedings for the security of persons and property in violation of 42 U.S.C. § 1981.

147.   As a result of Luceno's and the Company's discriminatory conduct, Sarracco has suffered substantial damages, including emotional distress, in an amount as yet undetermined.

148.   Luceno's and the Company's discriminatory conduct was taken with malice and/or reckless indifference to Sarracco rights.  Sarracco is therefore entitled to punitive damages.

149.   By reason of the foregoing, Luceno and the Company are liable to Sarracco for back pay, front pay or reinstatement, compensatory damages, punitive damages, pre-judgment interest, attorneys' fees and costs.

## COUNT XIII

### DISCRIMINATION IN VIOLATION OF  AGE DISCRIMINATION
### Under 29 U.S.C. § 621
### *Sarracco v. Luceno and Majestic*

150.   Sarracco realleges paragraphs 45 to 75 and incorporates them by reference as paragraphs 45 to 75 of Count XIII of this Complaint.

151.   The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, as amended by The Older Workers Benefit Protection Act (Pub. L. 101-433) and as amended by § 115 of the Civil Rights Act of 1991 (P.L. 102-166)  makes it

173302

unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of such individual's age.

152.   Sarracco is over 40 years of age and is in the protected age category.

153.   Luceno and Company are liable for the discrimination alleged here with Luceno being individually liable and the Company assuming liability under the doctrine of *respondeat superior*.  Moreover, the Company is strictly liable for the acts of its supervisory employees because Luceno used his actual or apparent authority to further the unlawful conduct other wising aiding in accomplishing the unlawful conduct by the existence of an agency relationship.

154.   The Company is liable for the acts of Luceno because  the Company provided no reasonable avenue of complaint.

155.   The Company is liable for the acts alleged herein because the Company's top echelon consisted of Luceno, who established the corporate culture at the Company which encouraged sexual discrimination and harassment.

156.   The hostile work environment was sufficiently severe and pervasive such that it altered the condition of Sarracco's employment, affected the terms, conditions and privileges thereof in violation of ADEA.

157.   As a result of such conduct by Luceno and the Company, Sarracco has suffered damages and is entitled to back pay, front pay, and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Sarracco as a consequence of Luceno and the Company's illegal conduct.

173302

158.   Because Luceno's and the Company's discriminatory treatment of Sarracco was willful and/or in reckless disregard of her federally-protected rights, due to which Sarracco is entitled to an award of punitive damages against defendants.

## COUNT XIV

### VIOLATION OF U.S. EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA)
### *Sarracco v. Luceno and Majestic*

159.   Sarracco alleges paragraphs 45 to 75 and incorporates them by reference as paragraphs 45 to 75 of Count XV of this Complaint.

160.   Federal law, specifically the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* provides protection for retirement plans generally and specifically to Sarracco's retirement plan at the Company.  ERISA is designed to ensure that retirement plans are established and maintained in a fair and financially sound manner.

161.   As per the allegations made herein, Luceno and Company have not established or maintained Sarracco's retirement in a fair or financially sound manner.

162.   ERISA provides for various civil penalties in accordance with failure to meet statutory requirements.

163.   As Luceno and Company have acted maliciously in terms of depriving Sarracco of his retirement, said defendants are liable to Sarracco for any and all retirement sums due and owing together with applicable civil penalties, including the costs of bringing suit.

173302

## COUNT XV

### VIOLATION OF NEW YORK LABOR LAW
### *Sarracco v. Luceno and Majestic*

164. Sarracco realleges paragraphs 45 to 75 and incorporates them by reference as paragraphs 45 to 75 of Count XV of this Complaint.

165. New York State *Executive Law* and *Labor Law* make it unlawful for an employer not to post policies with respect to sick leave, vacation, personal leave, holidays and work days; require proper written notice of firing; and *Labor Law* § 215 provides for penalties and civil actions upon employers who penalize employees because of complaints of employer violations.

166. *Labor Law* § 198-C also requires Luceno and Company to pay benefits and wage supplements to Sarracco. Luceno and Company have not paid Sarracco his full commissions or his retirement.

167. As a result of the conduct complained of herein, Luceno and Company have violated the terms of New York's *Executive Law* and *Labor Law*.

168. In accordance with *Labor Law* § 215, Sarracco is entitled to bring a civil action thereunder because she has complained to Luceno and Company, and is entitled to all appropriate relief, including rehiring or reinstatement with restoration of seniority, payment of lost compensation, damages, and reasonable attorneys' fees.

173302

169.    In accordance with New York *Labor Law* § 215's terms notice of this action has been served upon the New York Attorney General by delivery of this Complaint.

## COUNT XVI

### VIOLATION OF NEW YORK LAW
### SEXUAL, AGE DISCRIMINATION and RETALIATION
### *Sarracco v. Luceno and Majestic*

170.    Sarracco alleges paragraphs 45 to 75 and incorporates them by reference as paragraphs 45 to 75 of Count XVI of this Complaint.

171.    New York State *Executive Law* §  296 makes it unlawful to discriminate against any individual in the terms conditions, or privileges of employment on the basis of sex and who are retaliated against for complaining about the terms of their employment. This creates an abusive and hostile work environment such that the conditions of employment are altered.  The same legal standards that apply to Title VII claims apply to claims brought under the Human Rights Law.

172.    The Human Rights Law, as amended, make it unlawful in New York for a resident person or domestic corporation to violate any provisions of the Human Rights Law.

173.    The Company is authorized to do business in the State of New York and its principal place of business is located there.

173302

174.  Luceno and the Company aided and abetted the unlawful conduct, as alleged herein, and actually participated in the conduct giving rise to the discrimination claims.

175.  Company management is liable because Luceno, as such, had the power to hire and fire Company employees and aided and abetted the discriminatory acts, as alleged herein.

176.  As a result of such conduct by Luceno and the Company, Sarracco has suffered damages and is entitled to back pay, front pay, and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Sarracco as a consequence of their illegal conduct which includes sexual discrimination, age discrimination and retaliation for Sarracco's assertion of his rights.

177.  Because Luceno's and the Company's treatment of Sarracco was willful and/or in reckless disregard of Sarracco's State-protected rights, due to which Sarracco is entitled to an award of punitive damages against Luceno and Company.

## COUNT XVII

### DEFAMATION AND/OR INTENTIONALLY MAKING A FALSE IN VIOLATION OF NEW YORK COMMON LAW
#### *Sarracco v. Luceno and Majestic*

178.  Sarracco realleges paragraphs 45 to 75 and incorporates them by reference as paragraphs 1 to 44 of Count XVII of this Complaint.

179.  New York common law provides a cause of action for intentionally making a false statement. This consists of a false and misleading statement that was

173302

uttered or published maliciously and with intent to harm another or done recklessly and without regard to the consequences where a reasonably prudent person would or should anticipate that damage.

180.   The publication by Luceno of statements referred to hereinabove about Sarracco were false and misleading. They were published maliciously and with intent to harm Sarracco, or done recklessly without regard to the consequences.  In this case a reasonably prudent person would or should anticipate that damage.

181.   The statements were made with knowledge that they were false and actual and common law malice for the purpose of demeaning, damaging, and destroying Sarracco's reputation and impeding his progress at the Company.

182.   Sarracco has suffered specific monetary loss as a result of the false statements which were intentionally made, resulting in damage to his reputation and preventing his promotion at the Company all to his damage and in an amount to be determined at trial.

183.   The Company is liable under the theory of respondeat superior and or/alter ego of Luceno.

184.   Defendants' treatment of Sarracco in publishing these intentionally false statements was motivated by actual malice and was wrongfully intended to injure Sarracco, due to which Sarracco is entitled to an award of punitive damages against defendants.

173302

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs request that the Court find in their favor and against defendants as follows:

(a)    Declare, that pursuant to Counts I, II, III, XI and XII hereof, the acts and conduct of defendants violate Title VII of the Civil Rights Act of 1964, as amended, the anti-retaliation provisions of those laws and 42 U.S.C. § 1981.

(b)    Declare that pursuant to Counts IV and XIII hereof, the acts and conduct of defendants violate the Age Discrimination in Employment Act, as amended and the anti-retaliation provisions of those laws.

(c)    Declare that pursuant to Counts V and XVI hereof, the acts and conduct of defendants violate the New York Human Rights Law and the anti-retaliation provisions of those laws.

(d)    Declare that pursuant to Count XIV hereof, the acts and conduct of defendants violate the Federal ERISA law.

(e)    Declare that pursuant to Counts VI and XV hereof, the acts and conduct of defendants violates the New York Labor laws.

(f)    Declare that pursuant to Counts VII, VIII, IX, X and XVII the acts and conduct of defendants violate the plaintiffs' rights under New York common law;

(g)    Award Castagna and Sarracco the value of all compensation and benefits as a result of defendants' unlawful conduct, including but not limited to back pay, reinstatement or, in lieu of reinstatement, front pay, liquidated damages, as well as

173302

monetary damages for emotional distress, punitive damages, special damages, interest,

costs and attorneys fees; and

        (h)    Award plaintiffs such other relief as this Court deems just and

proper.

Dated:  Garden City, New York
        November 9, 2009

                    **REISMAN, PEIREZ & REISMAN, L.L.P.**

                    By:      _____
                            E. Christopher Murray (CM-8980)
                            A Member of the Firm
                  1305 Franklin Avenue
                  PO Box 119
                  Garden City, New York  11530
                  (516) 746-7799