UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
PATRICIA CASTAGNA and NICK SARRACCO,

                       Plaintiffs,

       – against –

BILL LUCENO and MAJESTIC KITCHENS, INC.,

                       Defendants.
------------------------------------------------------------------------x

**OPINION AND ORDER**

No. 09-CV-9332 (CS)

<u>Appearances:</u>

E. Christopher Murray
Ruskin Moscou Faltischek, P.C.
Uniondale, New York
*Counsel for Plaintiffs*

Costantino Fragale
Law Office of Costantino Fragale
Eastchester, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

       Before the Court is Defendants' Motion to Dismiss Plaintiffs' Second Amended

Complaint.  (Doc. 13.)

# I.      BACKGROUND

##     A.    Facts

       For the purposes of the instant motion, the Court assumes the facts, although not the legal

conclusions, in the Second Amended Complaint to be true.  This case concerns alleged

discriminatory and retaliatory practices by Defendants Majestic Kitchens, Inc. ("Majestic"), and

its President and owner, Bill Luceno, against Plaintiff employees Patricia Castagna and Nick

Sarracco.  (SAC ¶¶ 1, 6.)[1]

### 1.    Castagna's Allegations

Castagna began working for Majestic on April 1, 2005, at Luceno's request.  (*Id.* ¶ 8.)

She was first assigned to work for Majestic's comptroller, and after four to five months became

the front desk receptionist.  (*Id.* ¶¶ 10–11.)  "Almost from the inception of her employment and

continuing throughout the remainder of her employment," Castagna was subjected to "a regular,

frequent, unwanted, and abusive pattern of behavior directed against her and other women, in

contrast to male employees," and Luceno created "a working environment characterized by lewd,

racial and sexual comments and innuendos, profanity, offensive physical contact and other

inappropriate behavior."  (*Id.* ¶ 9.)  Luceno also failed to reduce to writing Majestic's "rules,

regulations, [and] policies on vacation time, sick time, break notices, raises, lunch time,

disciplinary policies, etc.," or to display "official posters . . . with respect to minimum wage or

labor law provisions."  (*Id.* ¶ 13.)  Castagna "urg[ed]" Luceno to adhere to labor law provisions

regarding such rules and regulations, resulting in "little" being done.  (*Id.*)  As a result of such

urging, Luceno "mocked and ridiculed" Castagna, and referred to her as "Ms. Corporation."  (*Id.*

¶ 14.)  Luceno never spoke to male employees in this fashion.  (*Id.*)

After Castagna had worked at Majestic for approximately two years, Luceno elevated her

salary to $20/hour (after having started her at $15/hour and elevated her to $16/hour a year into

her employment) and both "admitt[ed] that she was underpaid" and "threatened [her] that if she

talked to anyone about her raise she would be fired."  (*Id.* ¶ 15.)  Plaintiffs allege that this was so

that Castagna would not learn that Majestic's female employees were earning less than its male

---

[1]      "SAC" refers to the Second Amended Complaint, filed May 25, 2010.  (Doc. 12.)

employees.  (*Id.*)  Luceno also made "incessant personal complaints" about Castagna to others, including complaints about her "laughing, her voice, her breathing too loud, her coffee breaks and her bathroom breaks."  (*Id.* ¶ 16.)  Luceno's complaints regarding Castagna's bathroom breaks were "particularly difficult and humiliating," and his "tone and body gestures made clear that this topic related to Castagna's gender."  (*Id.* ¶ 18.)  These complaints eventually led to Castagna being "forced to schedule her bathroom requirements at 11 AM, during her 1:30 PM lunch break and at 3:30 PM, but then only if someone was available to cover her desk"; "[o]therwise, she had to wait until after 5 PM."  (*Id.* ¶ 17.)  As an example of Luceno's complaints regarding Castagna's laugh, "while Castagna was greeting new customers one day who told her a joke, she laughed," and "[w]ithin 20 seconds her phone rang and [Luceno] . . . berated [her] and told [her] that it sounded like a bunch of kindergarteners."  (*Id.* ¶ 19.)  The customers "overheard Luceno yelling at her from the corner office."  (*Id.*)  In contrast to female employees, male employees were not subjected to "personally demeaning comments," "public abuse," or "monitor[ing]" of bathroom breaks.  (*Id.* ¶¶ 16, 18, 19.)

Plaintiffs provide examples of other female employees to whom Luceno directed his "harsh comments and abuse treatment."  (*Id.* ¶ 21.)  On one instance, when Luceno was displeased with a price quote that a female employee provided to a customer, Luceno remarked that "f------ women give it away."  (*Id.*)  On another instance, when a new female employee requested that she be able to take two weeks' vacation for her honeymoon, Luceno "yelled at her so intensely . . . sometimes in front of customers" because "[h]e wanted her to cancel it and work instead."  (*Id.* ¶ 22.)  On the Saturday of the wedding, Luceno "directed employees to work, instead of attending the marriage ceremony and reception."  (*Id.*)  On another occasion, in May 2008, when a female employee was covering the front desk telephone during one of Castagna's

bathroom breaks, she "lost an important phone call for Luceno," in response to which Luceno "blew up and yelled and swore for all to see," and later yelled again at the employee in her office.  (*Id.* ¶ 23.)  Luceno verbally abused another female employee, "constantly criticiz[ing] her in front of other employees about being absent too much and her inability to use a computer," and on at least one occasion remarked regarding both that employee and a fellow female employee that there is "nothing worse than a female Jew."  (*Id.* ¶ 24.)  Luceno also "has been known to throw a coffee mug" at his wife, "which narrowly missed her, shattering on the wall with pieces flying all over the place."  (*Id.* ¶ 25.)  Luceno directed no such behavior toward any of Majestic's male employees.  (*Id.* ¶¶ 21–24.)

Castagna quit her job at Majestic on July 9, 2008.  (*Id.* ¶¶ 26–27.)  On that morning, Castagna was working at the receptionist's desk, and Luceno asked her to shorten her lunch for the entire week and spend that time covering the front desk telephone, as Majestic was short-handed.  (*Id.* ¶ 26.)  Not expecting that Luceno would provide her with overtime pay, Castagna asked if she could leave early and be credited for the extra time worked during lunch.  (*Id.*)  In response, Luceno "started yelling at her in a voice that all could hear throughout the showroom," "walked back to his office, still yelling," and then returned "[t]wenty minutes later . . . screaming as he called her 'Ms. Corporate' and yelling that she was selfish."  (*Id.* ¶¶ 26–27.)  Luceno then reached over Castagna's desk and shoved her computer monitor at her.  (*Id.* ¶ 27.)  He "proceeded to scream at her, swearing that that was not enough notice" and "further threatened Castagna by saying that she should wait to see what would happen the next time she would ask for a day off."  (*Id.*)  At that point, "fear[ing] for her personal and physical safety," and feeling "scared, alone, humiliated, embarrassed and really upset," Castagna "packed up her items and left."  (*Id.*)  That same day, she went to the house of her coworker Plaintiff Nick Sarracco, who

had witnessed part of the incident earlier that day.  (*Id.* ¶ 28.)  At Sarracco's suggestion, the two proceeded to the Mamaroneck Police station, where Castagna filled out a police report describing "the conditions of her employ and what Luceno had done to her that day."  (*Id.*)  Castagna filed a charge of discrimination, harassment, and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about October 21, 2008, and received a "right to sue" letter on or about August 14, 2009.  (*Id.* ¶¶ 2, 32, 33.)

### 2.      Sarracco's Allegations

Sarracco began working for Majestic in September 1996 as a salesman.  (*Id.* ¶ 43.) "Almost from the inception of his employment and continuing throughout the remainder of his employment," Sarracco witnessed Luceno "publicly demean[] and verbally abuse[]" Majestic's female employees.  (*Id.* ¶ 42.)  Luceno was not demeaning or abusive to male employees in the same way that he was to female employees, but he was "abusive to them in the sense of 'playing games' with their compensation and classification as an employee [versus] an independent contractor."  (*Id.*)  For example, Sarracco was placed on and off the books throughout his employment at Majestic:  when he started in September 1996, he was a salesman; he then left and was re-hired in December 1996 as an independent contractor; he was placed "on the books" as an employee in 2002 when he requested to participate in (and was denied participation in) a 401(k) program; and he was reclassified as an independent contractor in 2003 and, at Luceno's insistence, paid through a corporate entity.  (*Id.* ¶ 43.)

In 1997, Luceno promised Sarracco that Majestic would fund his retirement in the amount of $700/month, or $8400/year, both because other employees received a car allowance, while Sarracco did not, and in exchange for Sarracco's helping other Majestic employees with their kitchen design skills.  (*Id.* ¶ 45.)  On an annual basis, usually around the holidays, Luceno

"[took] out a sheet of paper and show[ed] Sarracco the value of the retirement account, telling him that the account earned no interest and that if Sarracco ever made an official inquiry into this matter, that it would be denied that he had any retirement whatsoever." (*Id.* ¶ 46.)  Luceno assured Sarracco that the retirement package amounted to approximately $100,000. (*Id.* ¶ 49.) Luceno has since refused to turn over the retirement money and has not provided Sarracco with any associated disclosures. (*Id.* ¶ 47.)

On July 9, 2008, when Luceno became verbally abusive toward Castagna, Sarracco confronted Luceno, upon which the confrontation ended. (*Id.* ¶ 48.)  In addition to suggesting that Castagna file a police report, and accompanying Castagna to the police station, Sarracco also had his lawyer send a letter to Luceno notifying Luceno that he was violating anti-discrimination laws. (*Id.* ¶¶ 29, 48, 49.)  That letter, dated July 12, 2008, also complained about Luceno's mischaracterization of Sarracco and other employees as independent contractors, as well as Sarracco's retirement package, the funds of which had not been "qualified" under applicable law nor paid out to Sarracco. (*Id.* ¶ 49.)  Immediately thereafter, Sarracco was fired. (*Id.* ¶¶ 29, 49.) Sarracco filed a charge of retaliation with the EEOC on or about September 12, 2008, and received a "notice of right to sue" on or about August 14, 2009. (*Id.* ¶¶ 2, 50, 51.)

**B.    Procedural History**

Plaintiffs filed the instant case on November 10, 2009. (Doc. 1.)  An Amended Complaint followed on January 25, 2010. (Doc. 4.)  The parties appeared before this Court for a pre-motion conference on April 27, 2010 to discuss Defendants' proposed motion to dismiss. (*See* Docket Entry dated April 27, 2010.)  Plaintiffs filed a Second Amended Complaint on May 25, 2010. (Doc. 12.)  The Second Amended Complaint asserts the following claims against both Defendants:  (1) hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title

VII"), by Castagna; (2) retaliation under Title VII, by Castagna; (3) retaliation, age

discrimination, and sex discrimination under the New York State Human Rights Law, N.Y.

Exec. Law § 290 *et seq.* ("NYSHRL"), by Castagna; (4) violation of New York Labor Law, by

Castagna; (5) intentional infliction of emotional distress, by Castagna; (6) assault, by Castagna;

(7) battery, by Castagna; (8) retaliation, under Title VII, by Sarracco; (9) violation of the U.S.

Employee Retirement Income Security Act ("ERISA"), by Sarracco; (10) violation of New York

Labor Law, by Sarracco; and (11) retaliation, age discrimination, and sex discrimination under

the NYSHRL, by Sarracco.  (SAC ¶¶ 57–125.)  Defendants moved to dismiss the Second

Amended Complaint on June 25, 2010.  (Doc. 13.)

## II.    DISCUSSION

### A.    Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.

Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks

omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure

from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 129 S. Ct. at 1950.

In considering whether a complaint states a claim upon which relief can be granted, the court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determine whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

### B.     Documents the Court May Consider on a Motion to Dismiss

When deciding a motion to dismiss based on Rule 12(b)(6), the Court is entitled to consider the following:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in [a] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Vill. of Sag Harbor*, No. 10-2603, 2011 WL 222480, at *4 (E.D.N.Y. Jan. 24, 2011) (internal quotation marks omitted); *accord Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).  A document is considered "integral" to the complaint where the plaintiff has "reli[ed] on the terms and effect of [the] document in drafting the complaint." *Chambers*, 282 F.3d at 153 (emphasis omitted).  Such reliance "is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.*; *see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (integral documents may include

documents that are partially quoted in the complaint or on which plaintiff relied in drafting the complaint).  A district court may exercise its discretion in considering materials that do not fall within any of the above-mentioned categories, although in such instances it must convert the motion to dismiss to a motion for summary judgment, *see In re WorldCom, Inc. Sec. Litig.*, 382 F. Supp. 2d 549, 556 (S.D.N.Y. 2005), and ensure that the nonmoving party has sufficient notice of the conversion as well as an opportunity to respond, *see Mathie v. Dennison*, 381 F. App'x 26, 26 (2d Cir. 2010).

Defendants have submitted various documents with their memorandum that are outside the Second Amended Complaint.  Defendants have submitted a transcript of the April 27, 2010 pre-motion conference in this case, a copy of Defendants' letter to the Court dated April 12, 2010 requesting a pre-motion conference, and a copy of the First Amended Complaint in this case. (Fragale Decl. Exs. B–D.)[2]  The Court may take judicial notice of these documents and consider them on a motion to dismiss.  *See, e.g.*, *Obilo v. City Univ. of City of N.Y.*, No. 01-5118, 2003 WL 1809471, at *3 n.10 (E.D.N.Y. Apr. 7, 2003) ("[D]efendants have attached to their memorandum an excerpt of the . . . pre-motion conference, of which judicial notice may be taken."); *Reisner v. Stoller*, 51 F. Supp. 2d 430, 440 (S.D.N.Y. 1999) ("The court may . . . take judicial notice of matters of public record, such as pleadings and court orders from prior litigation between the parties.").  Defendants have also submitted copies of Plaintiffs' EEOC charges.  (Fragale Decl. Exs. F–G.)  As Plaintiffs reference the charges several times in their Second Amended Complaint, the Court deems them incorporated by reference and may therefore consider them.  *See Morris v. Broadridge Fin. Servs., Inc.*, No. 10-1707, 2010 WL 5187669, at *3 n.2 (E.D.N.Y. Dec. 14, 2010).  Finally, Defendants have submitted an Affidavit of Vito (Bill)

---

[2]     "Fragale Decl." refers to the Declaration of Costantino Fragale in Support of Defendants' Motion to Dismiss.  (Doc. 14.)

Luceno  (Fragale Decl. Ex. E.)    This is the only document the submission of which Plaintiffs contest in their Opposition memorandum.  As the Luceno Affidavit was neither referred to in the Second Amended Complaint, nor integral to it, I decline to consider it in deciding Defendants' motion to dismiss.  *See, e.g.*, *Hoy v. Inc. Vill. of Bayville*, No. 10-0094, 2011 WL 679907, at *4 (E.D.N.Y. Feb. 25, 2011) (declining to consider defendants' affidavits because they "are not referred to in the complaint, nor are they integral to the complaint").

     **C.**    **Plaintiffs' Claims**

          **1.**    **Castagna's Hostile Work Environment Claim (Count 1)**

Castagna's first claim is for a hostile work environment.  Castagna alleges that "Luceno singled out female employees for public humiliation, verbal harassment, assault and other publicly demeaning actions because of Luceno's hatred toward women," and that "[t]he hostile work environment was sufficiently severe and pervasive such that it altered the condition of Castagna's employment, affected the terms, conditions and privileges thereof in violation of Title VII, and resulted in Castagna's constructive discharge or forced resignation from her position." (SAC ¶¶ 59, 62.)

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  "To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct:  (1) 'is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex.'"  *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir.

2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001)); *accord Murdaugh v. City of N.Y.*, No. 10-7218, 2011 WL 798844, at *4 (S.D.N.Y. Mar. 8, 2011).  The objective hostility of a given work environment should be assessed based on the "totality of the circumstances." *Patane*, 508 F.3d at 113 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  Factors that courts consider in making this assessment include:  "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) 'whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23); *see Murdaugh*, 2011 WL 798844, at *4.   As a general rule, incidents must be more than merely episodic to be deemed "severe or pervasive," though a single act can meet the threshold "if, by itself, it can and does work a transformation of the plaintiff's workplace."  *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks omitted).  Since the focus in a hostile work environment claim is on the nature of the workplace, instances of hostility and discriminatory harassment of other co-workers can support the claim. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000).  "Ultimately, to avoid dismissal under [Rule] 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse,' and '[the Second Circuit has] repeatedly cautioned against setting the bar too high' in this context."  *Patane*, 508 F.3d at 113 (second alteration in original) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).

Defendants put forth three arguments regarding Castagna's hostile work environment claim:  first, that the allegations in Plaintiffs' First Amended Complaint contradict those in their Second Amended Complaint and thus dispel any inference of gender-based discriminatory

conduct; second, that the allegations in the Second Amended Complaint depict mere "stray" events, not a pattern of conduct sufficient to give rise to a hostile work environment; and third, that some of the allegations in the Second Amended Complaint did not appear in Castagna's EEOC charge.  These arguments fail.

As an initial matter, there is no substantive contradiction between the First and Second Amended Complaints.  Defendants argue that the First Amended Complaint alleges sex-based discrimination against both men and women, (Defs.' Mem. at 11),[3] but the paragraph in the First Amended Complaint to which Defendants point does not allege that Luceno made sex-based comments toward men specifically, but rather alleges that he made "lewd, racial, and sexual" comments in general, (Fragale Decl. Ex. D ¶ 44).  To the extent that the First Amended Complaint alleged any disparate treatment toward men, Plaintiffs have clarified in their Second Amended Complaint that "male employees were not publicly demeaned or mocked like the female employees," and, instead, Luceno improperly classified and paid male employees as independent contractors.  (SAC ¶ 42.)

Defendants raised this same argument at the April 27, 2010 pre-motion conference, and the Court directed Defendants to provide the Court with caselaw as to whether the purported contradiction between the First and Second Amended Complaints "is a contradiction that requires dismissal or just one that would be the subject of cross-examination later on."  (Fragale Decl. Ex. B, at 10.)  Defendants have been unable to demonstrate that dismissal is warranted on this ground.  Defendants cite to *United States v. McKeon*, 738 F.2d 26 (2d Cir. 1984), (Defs.' Mem. at 12), but that very case undermines Defendants' argument.  As the Court in *McKeon* stated,

---

[3]     "Defs.' Mem." refers to Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Complaint.  (Doc. 15.)

> When a pleading is amended or withdrawn, the superseded portion ceases to be a
> conclusive judicial admission; but it still remains as a statement once seriously
> made by an authorized agent, and as such it is competent evidence of the facts
> stated, though controvertible, like any other extra-judicial admission made by a
> party or his agent.

738 F.2d at 31 (internal quotation marks omitted) (quoting *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter Inc.*, 32 F.2d 195, 198 (2d Cir. 1929)).  In other words, while the First Amended Complaint may be the subject of cross-examination should this case proceed to trial, it does not preclude Plaintiffs from advancing amended claims.  The well-established law of this Circuit dictates that Plaintiffs' Second Amended Complaint "supersedes all previous amended complaints . . . giving them no legal effect," *Valle v. YMCA of Greater N.Y.*, No. 05-5318, 2006 WL 2583073, at *1 (S.D.N.Y. Sept. 6, 2006) (citing *Harris v. City of N.Y.*, 186 F.3d 243, 249 (2d Cir. 1999)), and at the motion to dismiss stage, the Court must assume the truth of the facts alleged in the operative complaint and draw all reasonable inferences in Plaintiffs' favor, *see Papelino v. Albany Coll. of Pharmacy of Union Univ.*, No. 09-4248, 2011 WL 199124, at *1 n.1 (2d Cir. Jan. 24, 2011).

    As for the allegations in the Second Amended Complaint, they depict more than mere "stray" remarks, but rather a pattern of behavior sufficient to state a claim for a hostile work environment.  Castagna alleges that Luceno:  mocked her for asking that Majestic post notices on company policy and practices, calling her "Ms. Corporation," (SAC ¶¶ 13–14); made demeaning remarks regarding Castagna's laugh, her voice, and her loud breathing, (*id.* ¶¶ 16, 19); complained about Castagna's coffee breaks and frequent visits to the restroom, repeatedly screamed that Castagna "peed too much," and restricted the number of times she could visit the restroom daily, (*id.* ¶¶ 17–18); and frequently berated her in front of co-workers and customers alike, (*id.* ¶¶ 19, 26–27).  Castagna alleges that Luceno's treatment of her was emblematic of

how he treated other female employees, and that he made "personally demeaning comments," used "sexual and ethnic slurs," and was otherwise verbally and physically abusive toward Castagna's female coworkers as well.  (*Id.* ¶¶ 16, 21, 23).  By way of example, Castagna alleges that Luceno:  remarked that "f------ women give it away," when he was displeased with a female employee's price quote, (*id.* ¶ 21); yelled at a female coworker in front of other employees for requesting two weeks off for her honeymoon, and directed other employees to work on the day of her wedding, (*id.* ¶ 22); criticized a female employee for her absence and inability to use a computer, and remarked that there is "nothing worse than a female Jew," (*id.* ¶ 24); and threw a coffee mug at a female employee—his wife—narrowly missing her, before the mug shattered against a wall, (*id.* ¶ 25).  Importantly, Castagna alleges that male employees were never subjected to this kind of abuse.  (*Id.* ¶¶ 14–16, 18–19, 21–24.)

Defendants focus upon the two specifically quoted remarks in the Second Amended Complaint, to the exclusion of the other myriad allegations, in arguing that Plaintiffs' allegations of a hostile work environment are insufficient.  (Defs.' Mem. at 12–13.)  Further, the only case to which Defendants point, *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87 (2d Cir. 2001), is inapposite.  The case did not involve a hostile work environment claim but rather an allegedly age-discriminatory discharge.  *Id.* at 88.  The comments were considered "stray" because they were unrelated to the discharge.  *Id.* at 89, 92 n.2.  They were not analyzed as contributing to an allegedly hostile work environment, and in any event, the case was before the Court on summary judgment, after the Court had been presented with evidence regarding the statements' relevance with respect to the plaintiff's discharge.  *Id.* at 88–89.  Defendants appear to attempt to fit this case under the rubric of various cases dismissing hostile work environment claims premised on one or two allegedly discriminatory remarks and nothing more, but Defendants ignore that those

cases lack the allegations of other discriminatory conduct provided here.  *See, e.g.*, *MacEntee v. IBM*, No. 08-7491, 2011 WL 812395, at *7 (S.D.N.Y. Mar. 3, 2011) (dismissing hostile work environment claim under Americans with Disabilities Act where "Plaintiff's sole allegation supporting her disability harassment claim [was] that her supervisor made a single comment ridiculing her disability"); *Kleehammer v. Monroe Cnty.*, 743 F. Supp. 2d 175, 184 (W.D.N.Y. Sept. 8, 2010) (dismissing gender-based hostile work environment claim where female deputy sheriff jailor was subjected to offensive comments by male coworkers on only one occasion); *Milne v. Navigant Consulting*, No. 08-8964, 2009 WL 4437412, at *8 (S.D.N.Y. Nov. 30, 2009) (dismissing gender-based hostile work environment claim under Title VII where claim based on one event involving "inappropriate comments coupled with the grabbing of [plaintiff's] arm"); *Vilien v. Dep't of Educ.*, No. 06-3491, 2009 WL 857458, at *6 (S.D.N.Y. Mar. 31, 2009) (dismissing national-origin-based hostile work environment claim based only on "a comment referring to Haitians as good swimmers" and another comment by defendant "discussing [plaintiff teacher's] power over the Haitian students"); *Faison v. Leonard St., LLC*, No. 08-2192, 2009 WL 636724, at *3 (S.D.N.Y. Mar. 9, 2009) (dismissing religion-based hostile work environment claim where "[t]he Amended Complaint allege[d] one remark by [defendant] that raised the issue of the plaintiff's religion").

Defendants also appear to focus upon the two statements because they are the only statements directly referencing women in a derogatory fashion.  (Defs.' Mem. at 12.) Defendants thereby implicitly argue that Plaintiffs' remaining allegations are insufficient because the remaining remarks were facially gender-neutral.  But "'neither sex-specific and derogatory terms' nor any evidence that 'sexual desire' motivated the harassment is needed to prove an actionable hostile work environment."  *Gregory*, 243 F.3d at 695 (quoting *Oncale v. Sundowner*

*Offshore Servs., Inc.*, 523 U.S. 75, 80–81 (1998)).  Rather, "[t]he critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."  *Oncale*, 523 U.S. at 80 (internal quotation marks omitted).  Defendants ignore that Plaintiffs have repeatedly alleged that Luceno did not subject Castagna's male co-workers to the same verbally abusive and personally demeaning treatment to which she and her female co-workers were subjected.  Those allegations are sufficient to give rise to a reasonable inference that Luceno's conduct was motivated by gender.  *See, e.g.*, *Malone v. City of N.Y.*, No. 05-2882, 2006 WL 2524197, at *5 (E.D.N.Y. Aug. 30, 2006) (plaintiff satisfied gender-motivation prong of hostile work environment claim where he "allege[d] that his superiors would not have treated female or minority employees as harshly as he was treated"; "[w]hile [plaintiff] would be required to establish at trial that race or gender bias was the actual motive for his supervisors' conduct, at the pleading stage, it is sufficient to allege that female and minority employees were treated more favorably").[4]

Defendants also argue that Castagna cannot base her Title VII claim on the facially gender-discriminatory comments quoted above because she did not mention them in her EEOC charge.  (Defs.' Mem. at 12.)  There is no requirement that a Plaintiff detail in her EEOC charge every fact on which she may later rely to prove her charge.  *See Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009).  While Defendants may later argue that the omission of such obviously offensive comments undermines Castagna's credibility, credibility issues are not resolved on motions to

---

[4]   Defendants also argue that no inference of discrimination should arise where the person accused of discrimination is the person who hired the plaintiff.  (Defs.' Mem. at 13–14.)  "[T]he same-actor inference typically applies to claims of discriminat[ory termination], rather than to hostile work environment claims."  *Shannon v. Advance Stores Co.*, No. 08-0940, 2009 WL 2767039, at *11 (M.D. Tenn. Aug. 27, 2009).  Moreover, even if it applied, it would not necessarily override other evidence supporting the claim.  *See id.*

dismiss.  *See Field Day, LLC v. Cnty. of Suffolk*, No. 04-2202, 2005 WL 2445794, at *21 (E.D.N.Y. Sept. 30, 2005).

Moreover, a district court has jurisdiction over a Title VII claim if it has been included in an EEOC charge or if it is "reasonably related" to the claim actually filed with the Agency. *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (per curium).  One way for a Title VII claim to be considered "reasonably related" to the claim contained in the EEOC charge is if "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made."  *Id.* (internal quotation marks omitted).  "The central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases."  *Id.* (citation and internal quotation marks omitted).  "Essentially, this exception is an allowance of loose pleading, in recognition of the fact that 'EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination' allegedly suffered by the employee."  *Skalafuris v. City of N.Y.*, No. 09-5165, 2010 WL 4273286, at *3 (S.D.N.Y. Oct. 28, 2010) (quoting *Williams*, 458 F.3d at 70).  Normally, courts deem a Title VII claim to be outside the scope of the investigation that could reasonably be expected to grow out of the EEOC charge when the basis for discrimination alleged in the charge is a different basis than that alleged in the complaint (*e.g.*, racial vs. gender discrimination).  *See, e.g.*, *Marshall v. N.Y.C. Bd. of Elections*, 322 F. App'x 17, 18 (2d Cir. 2009) (affirming dismissal of religious discrimination claim where EEOC complaint only alleged race and gender discrimination and did not "include any incidents that would have allowed . . . [an] investigat[ion into] such allegations"); *Carter v. New Venture Gear, Inc.*, 310 F. App'x 454, 458 (2d Cir. 2009) (affirming dismissal of gender discrimination claim where EEOC complaint only alleged race discrimination); *Wali v. One*

*Source Co.*, 678 F. Supp. 2d 170, 183–84 (S.D.N.Y. 2009) (dismissing religious discrimination

claim where EEOC complaint alleged racial discrimination; mere fact that plaintiff's "name may

appear to be a Muslim name" was not enough to put the EEOC on notice of such claims).

That is not the case here.  While Luceno's specific comments that "f------ women give it

away" and that there is "nothing worse than a female Jew" were not included in the EEOC

charge, the charge alleged sex discrimination, (Fragale Decl. Ex. F, at 1 (checking box for sex

discrimination)), and the complaint attached thereto put forth various allegations of verbally

abusive behavior toward Castagna and her female coworkers, (*id.* Ex. F ¶¶ 10–11, 13–15.)

Castagna's Title VII claim here is the same claim she advanced in her EEOC charge, and the

omitted evidence is surely reasonably related to the claim in the EEOC charge, as the gender-

discriminatory comments would fall within the scope of the EEOC investigation that could

reasonably be expected to grow out of Castagna's EEOC charge for sex discrimination.  *See,*

*e.g.*, *Gutierrez v. City of N.Y.*, No. 08-6537, 2010 WL 4823644, at *3 (S.D.N.Y. Nov. 29, 2010)

(finding plaintiffs' failure to promote claims were "based on the same allegations of race and

national origin discrimination that underlie the EEOC claims" because "[p]laintiffs' EEOC

claims addressed performance evaluations, denial of overtime, job assignments, transfers, and

alleged harassing and discriminatory statements by supervisors").

Although Castagna has sufficiently alleged a hostile work environment claim, she cannot

maintain that claim against both Defendants—only against Majestic.  For the purposes of Title

VII, an employee's allegedly harassing conduct may be imputed to an employer-company if the

plaintiff alleges that the employee held a supervisory position with respect to the plaintiff.  *See*

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524

U.S. 775, 807 (1998); *accord Phanco v. R.J.M. Rest., Inc.*, No. 07-0687, 2010 WL 1418088, at

*5 (W.D.N.Y. Apr. 6, 2010) ("When, as in this case, the alleged harasser is the owner of the business or is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer."). Castagna has sufficiently alleged that here: she has alleged that Luceno was the president and owner of Majestic, that he directly corresponded with her regarding—and exercised control over—her daily work schedule, and that, as the front desk receptionist, she performed work directly for him. (SAC ¶¶ 6, 12, 17, 26–27.) Castagna cannot, however, maintain her claim against Luceno, as individuals are not subject to liability under Title VII. *See Sassaman v. Gamache*, 566 F.3d 307, 315 (2d Cir. 2009); *Smith v. Westchester Cnty.*, No. 09-5866, 2011 WL 570141, at *1 n.1 (S.D.N.Y. Feb. 15, 2011).[5] I therefore grant Defendants' motion to dismiss Castagna's hostile work environment claim against Luceno, but deny the motion to dismiss the hostile work environment claim against Majestic.[6]

---

[5]     I advised Plaintiffs' counsel at the April 27, 2010 pre-motion conference that individuals cannot be named as defendants in a Title VII action. (*See* Fragale Decl. Ex. B, at 3.) I am baffled as to why Castagna advanced such a claim in the Second Amended Complaint.

[6]     Castagna notes in passing that that Luceno's conduct resulted in her "constructive discharge" from Majestic. (SAC ¶ 62.) A claim for hostile-work-environment constructive discharge is distinct from a garden-variety hostile work environment claim and has different legal standards altogether. *See, e.g.*, *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010). Castagna does not include a separate count in the Second Amended Complaint based upon constructive discharge, nor does she discuss in her Opposition papers the standards applicable to such a claim or whether or not her allegations satisfy such standards.

Notwithstanding such omissions, to the extent that the Second Amended Complaint can be read to assert a claim for constructive discharge on behalf of Castagna, the allegations contained therein are sufficient to state such a claim at this stage of the litigation. "Where an alleged constructive discharge stems from an alleged hostile work environment, a plaintiff must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Id.* (internal quotation marks omitted). The plaintiff must demonstrate that the employer acted deliberately in creating the allegedly intolerable conditions, rather than merely acting negligently or ineffectively. *Petrosino v. Bell Atl.*, 385 F.3d 210, 229–30 (2d Cir. 2004). The plaintiff need not show, however, that the employer acted with the specific intent to cause the plaintiff to quit. *Id.* The allegations discussed above regarding Luceno's constant verbal harassment, in addition to Castagna's allegations that, on July 9, 2008, Luceno (1) "yell[ed] at her in a voice that all could hear throughout the showroom" for requesting to "leave early and

### 2.    Castagna's Title VII Retaliation Claim (Count 2)

Castagna next claims that "Luceno and the Company retaliated against [her] for her complaints in violation of the anti-retaliation provisions of Title VII." (SAC ¶ 68.) Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). In order to state a claim for retaliation, a plaintiff must demonstrate that (1) she was engaged in activities protected under Title VII; (2) the employer was aware of these activities; (3) the employer took adverse employment action against the plaintiff; and (4) a causal connection exists between the protected activities and the alleged adverse employment action. *Fincher*, 604 F.3d at 720. The protected activity that a plaintiff must allege to sustain a retaliation claim is "action taken to protest or oppose statutorily prohibited discrimination." *Cruz*, 202 F.3d at 566. In other words, "the protected activity alleged must involve some sort of complaint about a type of discrimination that Title VII forbids." *Brands-Kousaros v. Banco Di Napoli S.P.A.*, No. 97-1673, 1997 WL 790748, at *5 (S.D.N.Y. Dec. 23, 1997).

The only "protected activity" that the Second Amended Complaint can be construed as alleging for the purposes of this claim is Castagna's police report "describing the conditions of her employ and what Luceno had done to her that day." (SAC ¶ 28.) Castagna does not specify that she told the police anything about discrimination, as opposed to assault and abuse, so it is

---

take comp time," (2) returned "[t]wenty minutes later . . . screaming as he called her 'Ms. Corporate' and yelling that she was selfish," and (3) "reached over her desk and shoved a computer monitor at her," (SAC ¶¶ 26–27), satisfy the plausibility standard for a constructive discharge claim, in such that such conduct could constitute the "last straw" that prompted her to quit that same day. *See, e.g.*, *Felton v. Katonah Lewisboro Sch. Dist.*, No. 08-9340, 2009 WL 2223853, at *6 n.1 (S.D.N.Y. July 27, 2009) ("[a]lthough [plaintiff] certainly has not pled a strong claim of constructive discharge, the Court believes that it is sufficient to survive a motion to dismiss").

dubious that the report would constitute protected activity.[7]  Assuming for the sake of argument

that it does,[8] Castagna does not plausibly allege that Luceno took any adverse employment

action against her because of the police report.  Indeed, Castagna has alleged that she filled out

the police report only *after* she had already quit her job at Majestic.  (*Id.* ¶¶ 27–28 ("Not

knowing what [Luceno] would do to her during the next tirade and assault, Castagna packed up

her items and left.  Fearful for her safety, she was forced to quit. . . . *After the above-described*

*incident*, Castagna drove to fellow employee Sarracco's home.  Sarracco had seen part of the

screaming incident earlier in the day.  After he suggested that she fill out a police report, they

went to the Mamaroneck Police station where she filed a report . . . .") (emphasis added).)  And

while some conduct toward former employees may nonetheless constitute an "adverse

employment action" under Title VII, *see, e.g.*, *Beckett v. Prudential Ins. Co. of Am.*, 893 F. Supp.

234, 240 (S.D.N.Y. 1995) ("Poor recommendations, refusals to furnish recommendations, or

---

[7]      I decline to address whether the filing of a police report constitutes protected activity.
"[T]he Second Circuit appears not to have addressed [the] issue" of whether "the filing of a
police report can constitute protected activity" under Title VII.  *Labonia v. Doran Assocs., LLC*,
No. 01-2399, 2004 WL 1921005, at *10 (D. Conn. Aug. 25, 2004).  The Court in *Labonia* noted,
however, that various other circuit courts have considered the issue and held that a police report
does qualify as protected activity.  *Id.* (citing *Worth v. Tyer*, 276 F.3d 249, 265 (7th Cir. 2001);
*EEOC v. Dinuba Med. Clinic*, 222 F.3d 580, 586 (9th Cir. 2000)).  Notwithstanding such
precedent, the court declined to consider the report protected activity, given that the plaintiff in
that case expressly denied in her deposition that the police report was for an assault that
constituted sexual harassment, and therefore she could not plausibly argue on summary judgment
that the "assault was itself the culmination of a sexually hostile working environment permitted
to continue."  *Id.* at *11 (internal quotation marks omitted).  This is consistent with *Williams v.
City of N.Y.*, No. 99-2697, 2006 WL 2668211 (S.D.N.Y. Sept. 11, 2006), a case decided after
*Labonia*.  In *Williams*, the court held that the plaintiff's police report did constitute protected
activity, but unlike in *Labonia*, the plaintiff reported a sexual assault that was very clearly part of
the alleged discriminatory conduct at issue.  *See id.* at *20.

[8]      To the extent Castagna is alleging that Defendants retaliated against her for raising issues
regarding minimum wage, overtime, or compensatory time, those complaints would not
constitute "action taken to protest or oppose statutorily prohibited discrimination," which is
required for a Title VII retaliation claim.  *Cruz*, 202 F.3d at 566.

threats to future employers may be discriminatory practices if done in direct retaliation…"),

Castagna has made no allegations whatsoever concerning Luceno's conduct after she filed the

police report on July 9, 2008.  Nor has she alleged any complaints of discrimination that

preceded her resignation.  As such, Castagna's Title VII retaliation claim must be dismissed.

>       3.      **Castagna's NYSHRL Discrimination and Retaliation Claims
>               (Count 3)**

Castagna asserts claims for sex discrimination and retaliation under the NYSHRL, basing

those claims on the same facts that form the basis of her discrimination and retaliation claims

under Title VII.  It is well-settled that claims of discrimination and retaliation under the

NYSHRL are subject to the same analysis as discrimination and retaliation claims brought under

Title VII.  *Cruz*, 202 F.3d at 565 n.1; *Schiano v. Quality Payroll Sys. Inc.*, 445 F.3d 597, 609 (2d

Cir. 2006).  Unlike Title VII, however, individuals who actually participate in the discriminatory

conduct at issue may be held liable under the NYSHRL.  *Feingold v. New York*, 366 F.3d 138,

157 (2d Cir. 2004).  Accordingly, per the analysis above, Castagna has adequately alleged a

claim for sex discrimination under the NYSHRL against Majestic and Luceno, but she has failed

to allege a claim for retaliation.

Castagna also asserts a claim for age discrimination under the NYSHRL.  To state a

claim for age discrimination under the NYSHRL, Plaintiff must adequately allege that (1) she

was within the protected age group, (2) she was qualified for the job, (3) she suffered an adverse

employment action, and (4) the adverse employment action occurred under circumstances giving

rise to an inference of age discrimination.  *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d

Cir. 2005); *see Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 n.1 (2d Cir. 2009) (age

discrimination claims under NYSHRL subject to same analysis as claims under Age

Discrimination in Employment Act).  Castagna's claim for age discrimination must fail because,

at a minimum, she fails to allege any facts that would support the inference that Luceno's conduct was in any way related to her age.  Instead, the allegations relating to Castagna focus exclusively upon Luceno's selective abuse of female employees.  The Second Amended Complaint is bereft of allegations that Luceno, or anyone else at Majestic for that matter, made facially age-discriminatory comments or treated older employees differently than younger employees.  In fact, the only allegation even potentially related to the age discrimination claim is the allegation that Castagna "was born in 1949."  (SAC ¶ 4.)  Such an allegation cannot possibly support a claim for age discrimination.  *See, e.g.*, *Avgerinos v. Palmyra-Macedon Cent. Sch. Dist.*, 690 F. Supp. 2d 115, 130 (W.D.N.Y. 2010) (granting motion to dismiss age discrimination claim where "[t]here were no allegations by plaintiff that any member of the [defendant school district] made any discriminatory comments relating to his age" and "the Complaint does not allege that any member of the [defendant school district] engaged in any overt discriminatory conduct toward the plaintiff concerning plaintiff's age"; "plaintiff's claims do not give rise to an inference of discriminatory intent because there are no allegations from which such an inference can be made").

I therefore deny Defendants' motion to dismiss Castagna's claim for sex discrimination under the NYSHRL as to Majestic and Luceno, and grant the motion to dismiss Castagna's claims for retaliation and age discrimination as to Majestic and Luceno.

### 4.      Castagna's N.Y. Labor Law Claim (Count 4)

Castagna next brings a claim under New York Labor Law Section 215.  Section 215(1)(a) prohibits employers from discharging, penalizing, discriminating, or retaliating against any employee "because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes

violates any provision of this chapter," N.Y. Lab. Law § 215(1)(a)(i)—that is, because the

employee has made a complaint about violations of any other statutory section of the state labor

law, *Kelly v. Xerox Corp.*, 681 N.Y.S.2d 322, 323 (2d Dep't 1998). Section 215(2) provides for

a private cause of action by an employee against an employer alleged to have violated any of

Section 215(1)'s provisions on unlawful discrimination and retaliation. N.Y. Lab. Law § 215(2).

To state a claim for relief under Section 215, a plaintiff must allege that (1) "while employed by

the defendant, he or she made a complaint about the employer's violation of New York Labor

Law," and (2) he or she was "terminated or otherwise penalized, discriminated against, or

subjected to an adverse employment action as a result." *Higueros v. N.Y. State Catholic Health*

*Plan, Inc.*, 526 F. Supp. 2d 342, 347 (E.D.N.Y. 2007). A plaintiff must show that she

"complained about a specific violation of the Labor Law." *Epifani v. Johnson*, 882 N.Y.S.2d

234, 244 (2d Dep't 2009). "An informal complaint to an employer that the employer is violating

a provision of the Labor Law suffices." *Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08-6071, 2009

WL 289653, at *7 (S.D.N.Y. Jan. 30, 2009) (citations omitted). Moreover, such complaint does

not require citation to the statute; "[a]ll that is required is that the complaint to the employer be

of a colorable violation of the statute." *Weiss v. Kaufman*, No. 103473/2010, 2010 N.Y. Slip Op.

33261(U), 2010 N.Y. Misc. LEXIS 5699, at *4 (Sup. Ct. N.Y. Cnty. Nov. 18, 2010).

Plaintiff Castagna premises her Section 215 claim on Defendants' violation of New York

Labor Law Section 195, which requires, *inter alia*, that employer policies on sick leave,

vacation, personal leave, holidays, and hours be either publicly posted or provided to employees

in writing. *See* N.Y. Lab. Law § 195(5). Castagna adequately alleges that she complained of

violations to Section 195(5): she alleges that Luceno failed to reduce to writing Majestic's

"rules, regulations, [and] policies on vacation time, sick time, break notices, raises, lunch time,

disciplinary policies, etc.," or to hang "official posters . . . with respect to minimum wage or labor law provisions," (SAC ¶ 13), and that she urged Luceno to resolve such failures, (*id.* ¶¶ 13–14).  Castagna also alleges that, as a result of her urging Luceno to comply with Section 195, Luceno "mocked and ridiculed" her and referred to her as "Ms. Corporation."  (*Id.* ¶ 14.)  This final allegation, however, fails to satisfy the second requirement of Section 215—namely, that Castagna was "terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action as a result" of her complaint.  *Higueros*, 526 F. Supp. 2d at 347.

The majority of cases involving Section 215 claims are premised on the employee's termination or discharge.  *See, e.g.*, *Hai Ming Lu v. Jing Fong Rest., Inc.*, 503 F. Supp. 2d 706, 712 n.6 (S.D.N.Y. 2007) ("Although the majority of successful retaliation claims under N.Y. Labor Law § 215 are premised on employment termination, this is not the only action that may constitute an 'adverse employment action.'  There is however little precedent for claims involving an action less adverse than termination."); *Shaw v. Baldowski*, 747 N.Y.S.2d 136, 145 (Sup. Ct. Albany Cnty. 2002) ("The only reported decisions concerning violations of Labor Law § 215 involve claims of improper discharge.").  Courts have noted, however, that employment actions less severe than outright termination may nonetheless serve as the basis for a valid Section 215 claim.  For example, the court in *Shaw v. Baldowski*, looking to federal standards in First Amendment retaliation cases, observed that, for Section 215 claims, "'[a]dverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand,'"  and that "'using an objective standard . . . the total circumstances of [a plaintiff's] working environment [must have] changed to become unreasonably inferior and adverse when compared to a typical or normal, not ideal or model, workplace.'"  747 N.Y.S.2d at 144 (quoting *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002)).  The court in *Shaw* further

observed that "'[i]ncidents that are relatively minor and infrequent will not meet [this] standard, but otherwise minor incidents that occur often and over a long period of time may be actionable if they attain the critical mass of unreasonable inferiority.'"  *Id.* (quoting *Phillips*, 278 F.3d at 109).  The allegedly retaliatory employment actions to which plaintiff pointed in that case were being forbidden to talk to her co-workers and forced to work in a separate office area.  *Id.* at 145.  Applying federal standards, the court held that this did not constitute adverse employment action. *Id.*

To be sure, other courts have held employment actions less severe than outright termination to be actionable under Section 215, but in those cases the action at issue seemed to implicate some legal, financial, or significant reputational harm for the plaintiff.  *See, e.g.*, *Kreinik v. Showbran Photo, Inc.*, No. 02-1172, 2003 WL 22339268, at *9 (S.D.N.Y. Oct. 14, 2003) (defendant's filing of counterclaims constituted sufficient adverse employment action under § 215 because "counterclaims asserted against [plaintiff] could harm his reputation in his industry and negatively affect his prospective employment or business opportunities"); *cf. Electchester Hous. Project, Inc. v. Rosa*, 639 N.Y.S.2d 848, 849 (2d Dep't 1996) (under analogous provision of New York Executive Law, defendant's contesting of plaintiff's unemployment benefits, in response to former employee's filing of a complaint with State Division of Human Rights, constituted retaliation).  Luceno's occasional ridiculing and name-calling does not implicate those same concerns and cannot be said to rise to that level of severity. The situation with which the Court is presented here is much closer in nature to the employment actions in *Shaw*.  *See Shaw*, 747 N.Y.S.2d at 145–46; *see also Hai Ming Lu*, 503 F. Supp. 2d at 713 (waiter's assignment to most difficult section of restaurant for two consecutive nights after initiating an employment discrimination action "too trivial" to qualify as an adverse employment

action).  As Castagna has failed to adequately allege an adverse employment action in

connection with her complaints regarding Defendants' failure to adhere to New York Labor Law

Section 195, her state labor law claim must be dismissed.

> **5.      Castagna's Claims for Intentional Infliction of Emotional Distress,
> Assault, and Battery (Counts 5, 6, and 7)**

Castagna's final three claims are for intentional infliction of emotional distress, assault,

and battery in connection with the July 9, 2008 incident during which Luceno shoved a computer

monitor at Castagna.  Federal courts apply state statutes of limitations to intentional tort claims

such as these.  *Rock v. Mustich*, No. 08-4976, 2009 WL 2391776, at *5 (S.D.N.Y. Aug. 3, 2009).

The statute of limitations for each of the tort claims that Castagna asserts here is one year.  N.Y.

C.P.L.R. § 215(3); *see Gallagher v. Dirs. Guild of Am., Inc.*, 533 N.Y.S.2d 863, 865 (1st Dep't

1988) (§ 215(3) extends to intentional infliction of emotional distress).  Defendants correctly

argue that all three claims are time-barred, as the acts giving rise to the torts occurred more than

one year prior to the day on which this case was filed—November 10, 2009.

Castagna argues that the statute was tolled in at least one of two ways, but neither tolling

rule applies to the facts of this case.   Castagna first points to N.Y. C.P.L.R. § 215(8)(a), which

provides that "[w]henever it is shown that a criminal action against the same defendant has been

commenced with respect to the event or occurrence from which a claim governed by this section

arises, the plaintiff shall have at least one year from the termination of the criminal action as

defined in section 1.20 of the criminal procedure law in which to commence the civil action."

N.Y. C.P.L.R. § 215(8); *accord Maher v. Alliance Mortg. Banking Corp.*, 650 F. Supp. 2d 249,

269 (E.D.N.Y. 2009).  For the purposes of Section 215(8)(a), a "criminal action" "commences

with the filing of an accusatory instrument against a defendant in a criminal court." N.Y. Crim.

Proc. Law § 1.20(16), (17); *accord Von Bulow v. Von Bulow*, 634 F. Supp. 1284, 1299 (S.D.N.Y.

1986). Cases applying the tolling provisions of Section 215(8)(a) make clear that the plaintiff had previously filed a criminal complaint in state court, or, at the very least, that a criminal court proceeding had been carried out. *See, e.g.*, *Maher*, 650 F. Supp. 2d at 269 (applying tolling statute where it was "undisputed that [p]laintiff filed a criminal complaint against [defendant] . . . in the First District Court Nassau County"); *Cordero v. Epstein*, 869 N.Y.S.2d 725, 729 (Sup. Ct. N.Y. Cnty. 2008) (refusing to toll statute where "no criminal proceeding had ever been commenced against [defendant]"); *Robinson v. Franklin Gen. Hosp.*, 611 N.Y.S.2d 778, 779–80 (Sup. Ct. Nassau Cnty. 1994) (refusing to apply § 215(8) to a "plaintiff [who] was not a complainant in the criminal case prosecuted against [the] defendant"). This application is consistent with the policy underlying Section 215(8)(a), which is to "relieve the criminal victim of the burden of participating [simultaneously] in two trials based on identical facts in order to avoid the expiration of the statute of limitations on the civil claim." *Courtman v. Hudson Valley Bank*, 816 N.Y.S.2d 694 (Table), No. 109891/2005, 2006 WL 734389, at *2 (Sup. Ct. N.Y. Cnty. Jan. 6, 2006) (alternation in original) (internal quotation marks omitted); *accord Robinson*, 611 N.Y.S.2d at 779.

Castagna attempts to fit the facts of this case under Section 215(8)(a) by arguing that the statute was tolled when she "filed a criminal complaint against Luceno for the same conduct that is at issue in her assault, battery, and intentional tort claim." (Pls.' Opp'n at 15–16.)[9] In support of this argument, however, she points to paragraph 28 of the Second Amended Complaint, which discusses only the police report she filed on July 9, 2008. Neither that paragraph nor any other paragraph in the Second Amended Complaint alleges that Castagna or anyone else filed an accusatory instrument against Luceno in criminal court, or otherwise discusses any sort of

---

[9]     "Pls.' Opp'n" refers to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss. (Doc. 16.)

criminal proceeding that was initiated against Luceno.  And Castagna's allegation that she filed a

police report is not sufficient to give rise to such inferences.  There is simply no reason to believe

that Castagna would have had to participate in two simultaneous proceedings in order to avoid

the expiration of the statute of limitations on her civil state-law claims.[10]  As such, I hold that the

one-year statute of limitations for Castagna's tort claims was not tolled under Section 215(8).

Castagna next argues that the statute of limitations was tolled by the filing of her EEOC

charge on October 21, 2008.  The Second Circuit has not yet addressed whether the statute of

limitations on a state-law tort claim is tolled when the claim arises from the same set of facts as a

Title VII claim filed with the EEOC.  Castagna supports her argument by citing to *Forbes v.*

*Merrill Lynch, Fenner & Smith, Inc.*, 957 F. Supp. 450 (S.D.N.Y. 1997), in which the Court held

that the statute was tolled, *id.* at 456.   (Pls.' Opp'n at 16.)  But *Forbes* also acknowledged that

"[t]here is a clear split of authority in this District on the question of whether filing a complaint

with the EEOC tolls the statute of limitations for independent state law claims such as the

intentional infliction of emotional distress."  *Forbes*, 957 F. Supp. at 455.  Despite the split in

District Court caselaw, however, "the weight of authority . . . has held that state common law

claims are *not* tolled during the pendency of an . . . EEOC claim."  *Duran v. Jamaica Hosp.*, 216

---

[10]     Castagna argues that "Defendants have not shown that [Castagna's police complaint] has
been adjudicated," and thus they have not "established that the statute of limitations has run."
(Pls.' Opp'n at 16.)  She has it precisely backwards.

> [The] defendant must satisfy the threshold burden of demonstrating, prima facie,
> that the time within which to sue has expired, and once that showing has been
> made, the burden shifts to the opponent to establish that the statute of limitations
> has been tolled or that he or she actually commenced the action within the
> applicable limitations period.

*Krichmar v. Scher*, Nos. 2010-01117, 2011-02550, 2011 WL 1206164, at *1 (2d Dep't Mar. 29,
2011).  Defendants having shown that the case was filed more than one year after the alleged
torts, it is Castagna's burden to show that a criminal action was in fact commenced.  She has not
done so.

F. Supp. 2d 63, 67 (E.D.N.Y. 2002) (emphasis added) (holding statute of limitations for slander claim not tolled during pendency of EEOC charge).  Indeed, the overwhelming majority of cases decided in New York federal courts—and all such cases considering the issue post-*Forbes*— have held that state-law statutes of limitations are not tolled by a plaintiff's filing of a claim with the EEOC or an equivalent state agency.  *See, e.g.*, *Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 123 (S.D.N.Y. 2009) (reversing magistrate judge's recommendation to toll statute of limitations for intentional infliction of emotional distress, assault, and battery claims during pendency of complaint with New York State Department of Human Rights ("NYSDHR") because "the weight of authority in this District overwhelmingly supports holding that [plaintiff's] state law tort claims are time-barred"); *Pasqualini v. Mortg. IT, Inc.*, 498 F. Supp. 2d 659, 668 (S.D.N.Y. 2007) (statute of limitations for intentional infliction of emotional distress, battery, and assault claims not tolled by filing of EEOC complaint); *Johnson v. Smarte Carte, Inc.*, No. 04-5573, 2007 WL 1176736, at *5 n.5 (E.D.N.Y. Apr. 20, 2007) (statute of limitations for intentional infliction of emotional distress claim not tolled by filing of complaint with NYSDHR); *Gardner v. St. Bonaventure Univ.*, 171 F. Supp. 2d 118, 131 (W.D.N.Y. 2001) (statute of limitations for intentional infliction of emotional distress claim not tolled during pendency of EEOC charge); *King v. Friend of a Farmer, Corp.*, No. 97-9264, 2001 WL 849460, at *4 (S.D.N.Y. July 26, 2001)  (intentional infliction of emotional distress claim not tolled during pendency of plaintiff's EEOC claims).

The rationale for not tolling the statute of limitations in this context is derived from *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454 (1975), in which the Supreme Court held that a plaintiff's time to file a discrimination claim under 42 U.S.C. § 1981, which is governed by the applicable state-law statute of limitations, is not tolled during the pendency of an EEOC

charge relating to the same claim of discrimination.  *Id.* at 457, 467.  The Court in *Johnson*

observed that "[t]he legislative history of Title VII manifests a congressional intent to allow an

individual to pursue independently [her] rights under both Title VII and other applicable state

and federal statutes," *id.* at 459 (citation and internal quotation marks omitted), and found that

there existed "no policy reason that excuses [a plaintiff's] failure to take the minimal steps

necessary to preserve each [of her] claim[s] independently," *id.* at 465–66; *see Kolesnikow*, 622

F. Supp. 2d at 122–23; *King*, 2001 WL 849460, at *4.  While the Second Circuit has not

addressed the question of whether *Johnson* is applicable to state-law tort claims, other circuit

courts have addressed the question and held that the statute of limitations is not tolled with

respect to such claims.  *See, e.g.*, *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317,

322–23 (7th Cir. 1992) (citing *Johnson* in holding that filing of EEOC claim did not toll statute

of limitations on state-law claim for invasion of privacy, and noting that "[t]he state-law claim

does not vindicate [plaintiff's] right to be free from discriminatory treatment based on her sex,

but rather her right to be free from 'offensive or objectionable' intrusion into her seclusion");

*Arnold v. United States*, 816 F.2d 1306, 1312–13 (9th Cir. 1987) (citing *Johnson* in rejecting

tolling argument for state-law assault, battery, and intentional infliction of emotional distress

claims, and noting that "the wrong underlying . . . [the] Title VII claim is distinct from that

underlying [the] state-law tort claims").  As one Court in this District has noted,

> It appears that only three district court decisions in the Second Circuit reached a
> contrary result.  In those cases, which all date from the 1990s, the courts' holdings
> were based on considerations of judicial efficiency and the concern that a rule
> against tolling would undermine the purposes of Title VII.  However, these
> decisions do not discuss *Johnson*, which rejected those considerations in
> analogous circumstances.

*Kolesnikow*, 622 F. Supp. 2d at 123 (citation and internal quotation marks omitted).  Given the

Court's holding in *Johnson*, and the overwhelming weight of authority in this Circuit, I hold that

the statutes of limitations for Castagna's state-law intentional tort claims were not tolled by the filing of her EEOC charge.  The claims are therefore untimely and must be dismissed.

### 6.      Sarracco's Title VII Retaliation Claim (Count 8)

Sarracco's first claim is for retaliation under Title VII.  As noted above, to state a claim for retaliation under Title VII, Sarracco must demonstrate that (1) he was engaged in a protected activity under Title VII; (2) Luceno was aware of this activity; (3) Luceno took adverse employment action against Sarracco; and (4) a causal connection exists between the protected activity and the adverse employment action.  *Fincher*, 604 F.3d at 720.  The protected activity must be an "action taken to protest or oppose statutorily prohibited discrimination," *Cruz*, 202 F.3d at 566—that is, it must involve "some sort of complaint about a type of discrimination that Title VII forbids." *Brands-Kousaros*, 1997 WL 790748, at *5.

Sarracco's termination from Majestic fulfills the "adverse employment action" requirement of his claim.  *See, e.g.*, *Miller v. Praxair, Inc.*, No. 09-2962, 2010 WL 4751782, at *2 (2d Cir. Nov. 24, 2010).  To fulfill the "protected activity" prong of his claim, Sarracco points to (1) his assistance to Castagna in filling out the July 9, 2008 police report, and (2) his attorney's July 12, 2008 letter to Luceno.  (Pls.' Opp'n at 14.)  Defendants argue that neither of these constitute protected activity.

First, Defendants argue that "[i]t is clear beyond the shadow of a doubt that helping a coworker file a police report does not constitute 'protected activity.'"  (Defs.' Mem. at 15.) Defendants provide no support for this assertion, and, as indicated above, I decline to address whether the filing of a police report—or, in this instance, aiding in the filing of a police report— constitutes protected activity.  But assuming for the sake of argument that it does, the Second Amended Complaint alleges no facts suggesting that Luceno was aware of the police report

when he fired Sarracco.  As such, the police report cannot serve as the basis for his retaliation

claim.  *See, e.g.*, *Khaleel v. Metro One Loss Prevention Serv. Grps.*, 469 F. Supp. 2d 130, 134

(S.D.N.Y. 2007) (dismissing retaliation claim based on filing of EEOC charge where "[n]owhere

in the complaint or in [plaintiff's] opposition to the [motion to dismiss] is there any allegation

that he provided [defendant] with a copy of his EEOC charge, or that [defendant] otherwise had

any notice about [plaintiff's] EEOC filing prior to his dismissal").

Defendants next argue that the letter from Sarracco's attorney cannot constitute the

required protected activity because Sarracco did not base his EEOC retaliation charge on the

letter.  As noted above, a district court has jurisdiction over a Title VII claim that is "reasonably

related" to an EEOC charge in that "the conduct complained of would fall within the scope of the

EEOC investigation which can reasonably be expected to grow out of the charge that was

made"—that is, where "the complaint filed with the EEOC gave that agency adequate notice to

investigate discrimination on both bases."  *Williams*, 458 F.3d at 70 (citation and internal

quotation marks omitted).[11]  If the EEOC charge adequately set forth a claim for retaliation for

opposing discrimination in violation of Title VII, it would not matter, as discussed above, that

particular evidence of such opposition (*i.e.*, the letter) was not set forth.  But here, the conduct

complained of in the Second Amended Complaint cannot be said to fall within the scope of the

EEOC investigation that could reasonably be expected to grow out of Sarracco's charge.

---

[11]     The Title VII claim may also be considered "reasonably related" to the EEOC charge if
(1) the claim alleges retaliation suffered by the employee as a result of the filing of the EEOC
complaint or (2) the additional claim alleges further instances of discrimination carried out in the
same exact manner as those instances included in the EEOC charge.  *See Butts v. City of N.Y.
Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402–03 (2d Cir. 1993), *superseded by statute on
other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071.  Neither of those
theories applies here.

As an initial matter, on his EEOC charge, Sarracco indicates that he suffered from religious discrimination only—not that he was he was the victim of retaliation.  (Fragale Decl. Ex. G, at 1 (checking "religion" box, but leaving "retaliation" box unchecked).)  Although it is true that Sarracco alleges in the complaint attached to his EEOC charge that Luceno retaliated against him for his support of Castagna, the complaint fails to allege the type of discrimination directed toward Castagna about which Sarracco was complaining.  The EEOC complaint alleges only that "Mr. Luceno has retaliated against me and fired me for my support of and assistance to a fellow worker, Patricia Castagna when and after he became verbally abusive and violent and assaulted her after she was told not to take her lunch and he refused her subsequent request to leave early."  (*Id.* Ex. G ¶ 4.)  This allegation suggests only that Sarracco stopped Luceno's assault of Castagna, (*see* SAC ¶ 48), not that he opposed gender-based or any other sort of discrimination.  In other words, the EEOC complaint does not allege that Luceno was abusive toward Castagna *because* of her gender; for all one can tell from that complaint, Castagna was discriminated against because of her race, religion, national origin, sexual orientation, or pregnancy, or was mistreated simply because Luceno did not like her.  Therefore, even assuming that Sarracco's EEOC charge and complaint can be read as alleging retaliation, they make no mention of the gender-based discrimination which Sarracco now claims he was retaliated against for opposing.  His EEOC charge therefore would not have put the EEOC on notice to investigate gender-based discrimination, or retaliation for opposing the same, at Majestic.  *See, e.g.*, *Marshall*, 322 F. App'x at 18 (affirming dismissal of religious discrimination claim where plaintiff failed to include in EEOC charge "any incidents that would have allowed the [city human rights commission] to investigate such allegations"); *Carter*, 310 F. App'x at 458 (affirming dismissal of sexual harassment claim where "[plaintiff's] charge to the EEOC made

no reference whatsoever to gender bias at [defendant employer]," and concluding that "[t]he EEOC was thus not 'on notice' of [plaintiff's] gender-based complaints").  Sarracco's retaliation claim must therefore be dismissed.

### 7.   Sarracco's ERISA Claim (Count 9)

Sarracco's second claim is for ERISA violations.  Specifically, Sarracco seeks to recover the funds of the retirement plan that Luceno allegedly created for him while Sarracco worked at Majestic.  Defendants argue that Sarracco's claim must fail because, first, Sarracco's claim for unspecified relief fails to state a claim under the applicable ERISA statutory section, and, second, Sarracco fails to allege that a retirement plan existed.  (Defs.' Mem. at 16.)  Although Defendants' first argument is unavailing, their second argument demonstrates that Sarracco's claim must be dismissed.

First, Defendants cite to *Hall v. Kodak Retirement Income Plan*, 363 F. App'x 103 (2d Cir. 2010), to support their argument that "a claim for 'unspecified' relief, where the gravamen of the complaint is a claim for damages and other monetary relief owing under a contractual obligation, no ERISA claim lies."  (Defs.' Mem. at 16.)  The plaintiff in *Hall* brought a breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(3), which permits "injunctive relief against 'any act or practice which violates any provision of this subchapter or the terms of the plan' or 'other appropriate equitable relief' to redress such violations or to enforce any provision of ERISA or of the plan."  *Hall*, 363 F. App'x at 107 (quoting 29 U.S.C. § 1132(a)(3)).  The plaintiff there sought "[a]ny and all appropriate equitable relief that is available to Plaintiff, without further specification," and the Court held that such "unspecified" relief was insufficient to state a claim for equitable relief under 29 U.S.C. § 1132(a)(3).  *Id.* at 107 (internal quotation marks omitted). *Hall* is inapposite, as Sarracco neither asserts a breach of fiduciary duty claim nor seeks

injunctive relief under Section 1132(a)(3).  Instead, Sarracco asserts "a civil claim to recoup

benefits pursuant to 29 U.S.C. Section 1132."  (SAC ¶ 108.)  His claim therefore seeks legal

relief under Section 1132(a)(1)(B), which permits a beneficiary, such as Sarracco, "to recover

benefits due to him under the terms of his plan."  29 U.S.C. § 1132(a)(1)(B).[12]

There remains the question, however, as to whether Sarracco has sufficiently alleged the

existence of an ERISA plan.  "To state a claim under ERISA, a plaintiff must allege and

establish the existence of an 'employee benefit plan' that is governed by ERISA."  *Albers v.*

*Guardian Life Ins. Co. of Am.*, No. 98-6244, 1999 WL 228367, at *2 (S.D.N.Y. Apr. 19, 1999)

(citing 29 U.S.C. § 1003(a)).  There are two types of plans under ERISA, "employee welfare

benefit plans," *see* 29 U.S.C. § 1002(1), and "employee pension benefit plans," *id.* § 1002(2)(A).

Sarracco alleges the existence of an employee pension benefit plan, which ERISA defines as

follows:

> [A]ny plan, fund, or program which was heretofore or is hereafter established or
> maintained by an employer or by an employee organization, or by both, to the
> extent that by its express terms or as a result of surrounding circumstances such
> plan, fund, or program—
>> (i) provides retirement income to employees, or
>> (ii) results in a deferral of income by employees for periods extending to
>> the termination of covered employment or beyond,
> regardless of the method of calculating the contributions made to the plan, the
> method of calculating the benefits under the plan or the method of distributing
> benefits from the plan.

*Id.* § 1002(2)(A).  "[A] 'plan, fund, or program' under ERISA is established if from the

surrounding circumstances a reasonable person can ascertain the intended benefits, a class of

beneficiaries, the source of financing, and procedures for receiving benefits."  *Grimo v. Blue*

---

[12]     Sarracco does not specify in his Second Amended Complaint the particular ERISA
subsection under which he brings his claim, (*see* SAC ¶¶ 107–11), even though I directed him to
do so at the pre-motion conference, (*see* Fragale Decl. Ex. B, at 4).  Although he highlights 29
U.S.C. § 1132(a)(1)(A) is his Opposition papers, (*see* Pls.' Opp'n at 12, 14), that subsection
clearly does not apply here.

*Cross/Blue Shield*, 34 F.3d 148, 151 (2d Cir. 1994) (alteration in original) (internal quotation marks omitted); *accord Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1209 (2d Cir. 2002); *Laverty v. Savoy Indus., Inc.*, 954 F. Supp. 86, 89 (S.D.N.Y. 1997).  The term "establish" does not refer to the employer's decision to provide benefits; rather, "the reality of an employee pension benefit plan," as evidenced by acts or events that record, exemplify, or implement the decision, is determinative.  *Guilbert v. Gardner*, 480 F.3d 140, 146 (2d Cir. 2007) (internal quotation marks omitted).  The plan "need not be a formal written document."  *Grimo*, 34 F.3d at 151.  Ultimately, "[t]he touchstone for determining the existence of an ERISA plan is whether a particular agreement creates an ongoing administrative scheme."  *Eckardt v. Wiebel Tool Co., Inc.*, 965 F. Supp. 357, 363 (E.D.N.Y. 1997) (internal quotation marks omitted); *see Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 565 (2d Cir. 1998) ("[B]oth the Supreme Court and this court have emphasized that ERISA applies only where such an undertaking or obligation requires the creation of an ongoing administrative program.") (internal quotation marks omitted).

Sarracco does not adequately allege a "plan, fund, or program" because, at a minimum, he does not allege any facts indicating that from the surrounding circumstances, a reasonable person could ascertain the procedures for receiving benefits from the alleged plan.  Sarracco alleges only that Luceno promised him that "the Company would fund his retirement in the amount of $700 per month" and that "[o]n an annual basis, typically around the Christmas holiday, Luceno would take out a sheet of paper and show [him] the value of the retirement account."  (SAC ¶¶ 45–46.)  Sarracco does not allege that Luceno ever indicated to him how he would later receive the funds from the account that Luceno had allegedly managed.  To the contrary, the Second Amended Complaint suggests that Luceno may have restricted access to the plan's funds:  Sarracco alleges that the account earned no interest and that "if [he] ever made an

official inquiry into this matter, . . . it would be denied that he had any retirement whatsoever."

(*Id.* ¶ 46.)  *See Guilbert*, 480 F.3d at 146 (affirming summary judgment dismissing ERISA claim

because no reasonable fact-finder could find plan established where plaintiff alleged only that

employer promised certain contributions, wrote terms on legal pad and said company would

maintain them, assured plaintiff repeatedly that plan had been established, and took tax

deductions for employee benefits).

     The only cases to which Sarracco points in support of his ERISA claim support

Defendants' position that Sarracco has failed to allege the existence of a plan.[13]  In *Moeller v.

Bertrang*, 801 F. Supp. 291 (D.S.D. 1992), the court found that an oral promise by an employer

to establish a retirement account for employees constituted an ERISA plan.  *Id.* at 294.  The court

found that a reasonable person could ascertain the procedures for receiving benefits because

"[a]fter working for defendant for five years, the employee would receive $1,000 for each year

employed by defendant until the retirement age of 62 years," and the "[d]efendant promised to

pay to the employee a lump-sum in the amount of the employee's accrued retirement benefit

when the employee reached the retirement age of 62 years."  *Id.*  Similarly, in *Scott v. Gulf Oil

Corp.*, 754 F.2d 1499 (9th Cir. 1985), the Ninth Circuit Court of Appeals found that the plaintiff

had adequately alleged an ERISA plan by alleging that the defendant promised to provide

plaintiff with a severance payment in "a sum equal to two weeks of salary for each year of

employment with defendant."  *Id.* at 1504 n.2, *abrogated on other grounds by Fort Halifax*

---

[13]    Sarracco cites to these cases in arguing that an oral agreement can give rise to an ERISA plan—an argument that seems to be supported by cases within this Circuit, *see, e.g.*, *Grimo*, 34 F.3d at 15; *Molyneux v. Arthur Guinness & Sons, P.L.C.*, 616 F. Supp. 240, 243 (S.D.N.Y. 1985), and that Defendants do not contest.

*Packing Co., Inc. v. Coyne*, 482 U.S. 1 (1987).[14]  Sarracco here makes no such allegations of graduated payments or severance payments by which he was to receive the benefits of the alleged plan.  *See, e.g.*, *Dutka v. Emp'rs Health Ins. Co.*, 760 F. Supp. 660, 663 (E.D. Mich. 1991) (ERISA claim not adequately alleged where "[d]efendant has not offered any evidence from which a reasonable person could ascertain the procedures for receiving benefits under an alleged Employee Welfare Benefit Plan established by plaintiff's employer"; "[w]hile defendant suggests that the cover sheet to the Employer Group Application completed by plaintiff provides the information necessary to conclude that a plan does in fact exist, defendant's motion and brief do not explicitly or implicitly indicate the procedures by which the intended beneficiaries of the alleged Employee Welfare Benefit Plan would receive benefits"); *Molyneux*, 616 F. Supp. at 243–44 (dismissing ERISA claim where plaintiff alleged only that he was "aware of the company's benefit plans" and was later offered severance payment; plaintiff failed to allege "established procedures (written or unwritten) . . . or the method of financing or calculating benefits").  Here, Sarracco does not allege facts plausibly suggesting the procedures for receiving benefits from the alleged plan, and thus has not plausibly alleged the existence of such a plan.

Similarly, Sarracco does not allege the creation of an ongoing administrative scheme or program sufficient to demonstrate the existence of an ERISA plan.  He fails to plead any facts concerning the regulation or administration of the alleged plan's funds—whether, for example, the funds were held in trust, or whether fiduciaries were designated to control or manage the funds.  This alone is sufficient ground for dismissal.  *See, e.g.*, *Keire v. Curtis, Morris & Safford,*

---

[14]     The other case cited by Sarracco, *Sawinski v. Bill Curries Ford, Inc.*, 866 F. Supp. 1383 (M.D. Fla. 1994), involved an employee welfare benefit plan, not a pension plan, and the Court noted without elaboration that "[t]here are adequate factual allegations in [plaintiff's] Amended Complaint for this Court to conclude that the health insurance benefits provided by [defendant] to its employees were provided under a qualifying employee welfare benefit plan."  *Id.* at 1388.

*P.C.*, No. 98-0387, 1999 WL 173571, at *2 (S.D.N.Y. Mar. 29, 1999) ("[T]he amended

complaint does not allege an 'ongoing administrative program.'  The amended complaint does

not allege, and the By-Laws do not provide for, a 'plan, fund or program.' . . . The By-Laws

provided for no administrative scheme; they did not call for the creation of any trust funds; they

did not appoint any fiduciaries."); *see also Laverty*, 954 F. Supp. at 90 (plan not governed by

ERISA where "the Agreement contain[ed] none of the provisions which normally attend that

creation and maintenance of an ERISA plan"; agreement "contain[ed] no administrative scheme

for regulation and administration of plan funds," "name[d] no fiduciaries to control or manage

the operations and administration of funds to be paid out under its terms," "[made] no

arrangement for placing any assets in trust," and "fail[ed] to require plaintiff to contribute to any

fund that would serve as the source of accrued benefits, or to specify the basis on which

plaintiff's deferred contributions were to be made").  Sarracco's ERISA claim must therefore be

dismissed for failure to plausibly allege an ERISA plan.

### 8.    Sarracco's N.Y. Labor Law Claim (Count 10)

Sarracco brings claims under New York Labor Law Section 198-c for unpaid benefits

and Section 215 for retaliation.  Defendants argue that there is no private right of action under

Section 198-c, which by its terms provides only that a wrongful refusal to pay agreed-upon

benefits or wage supplements shall be a misdemeanor.  N.Y. Lab. Law § 198-c.[15]  There is

---

[15]    Section 198-c provides that,

> any employer who is party to an agreement to pay or provide benefits or wage
> supplements to employees or to a third party or fund for the benefit of employees
> and who fails, neglects or refuses to pay the amount or amounts necessary to
> provide such benefits or furnish such supplements within thirty days after such
> payments are required to be made, shall be guilty of a misdemeanor . . . .

N.Y. Lab. Law § 198-c(1).  The term "benefits or wage supplements" includes retirement
benefits.  *Id.* § 198-c(2).

"conflicting case law" and "considerable disagreement" as to whether a private right of action

under the Labor Law may be implied. *Dzanis v. JPMorgan Chase & Co.*, No. 10-3384, 2011

WL 1210205, at *6 (S.D.N.Y. Mar. 22, 2011) (declining to dismiss).  I find more persuasive the

cases finding a private right of action to be appropriate, *see Vysovsky v. Glassman*, No. 01-2531,

2007 WL 3130562, at *17 (S.D.N.Y. Oct. 23, 2007); *Chu Chung v. New Silver Palace Rests.,*

*Inc.*, 272 F. Supp. 2d 314, 316–19 (S.D.N.Y. 2003),[16] and accordingly decline to dismiss the

claim for unpaid benefits.  A private right of action comports with the remedial purposes of the

Labor Law and the language of Section 198, which allows for attorneys' fees and the like for

employees bringing private claims. *See Vysovsky*, 2007 WL 3130562, at *17.

Section 215(1)(a) prohibits employers from discharging, penalizing, discriminating

against, or retaliating against an employee because that employee has complained of a violation

of the state labor law.  Sarracco alleges under this section that Luceno fired him for complaining,

in his attorney's July 12, 2008 letter, that Luceno owed Sarracco approximately $100,000 in

unpaid retirement benefits stemming from the $700-a-month retirement account.  (SAC ¶¶ 49,

113–14.)  The conduct of which Sarracco complained was Luceno's conduct in violation of

Section 198-c, which indisputably can serve as the basis for a retaliation claim under Section

215. *See, e.g.*, *Kelly*, 681 N.Y.S.2d at 323 (affirming denial of defendant's summary judgment

motion seeking to dismiss plaintiff's Section 215 retaliation claim where plaintiff was fired for

filing complaint with state department of labor regarding defendant's failure to pay earned

commissions in violation of Section 198-c).  Although it is unclear from the Second Amended

Complaint whether the July 12, 2008 letter to Luceno specified that he had violated Section 198-

---

[16]     *Moran v. GTL Construction, LLC*, No. 06-0168, 2007 WL 2142343, at *5 (S.D.N.Y. July 24, 2007), and *Hammell v. Banque Paribas*, 780 F. Supp. 196, 200 (S.D.N.Y. 1991), go the other way.

c in particular, "[a]ll that is required is that the complaint to the employer be of a colorable

violation of the statute." *Kaufman*, 2010 N.Y. Misc. LEXIS 5699, at *4.  Sarracco therefore

adequately states a claim under New York Labor Law Section 215.

> **9.     Sarracco's NYSHRL Retaliation and Discrimination Claims (Count 11)**

Sarracco's final claims are for retaliation, age discrimination, and sex discrimination

under the NYSHRL.  As noted above, claims of discrimination and retaliation under the

NYSHRL are subject to the same analysis as discrimination and retaliation claims brought under

Title VII.  Given that Sarracco fails to state a retaliation claim under Title VII, he likewise fails

to state a retaliation claim under the NYSHRL.

Sarracco also fails to state a claim for age discrimination.  Like Castagna, Sarracco fails

to allege any facts that would support the inference that Luceno's conduct was related to his age.

The Second Amended Complaint is bereft of allegations that Luceno, or anyone else at Majestic

for that matter, made facially age-discriminatory comments, or treated older employees

differently than younger employees.  In fact, the only allegation even potentially related to

Sarracco's age discrimination claim is that he "was born in 1964," (SAC ¶ 5), and that is plainly

insufficient.

Finally, Sarracco's claim for sex discrimination must fail.  Sarracco does not specify

either in the Second Amended Complaint or Plaintiffs' Opposition brief whether he brings his

claim as a gender discrimination claim or as a hostile work environment claim.  If he brings his

claim as a gender discrimination claim, Sarracco must allege that (1) he belongs to a protected

class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4)

the circumstances gave rise to an inference of discrimination.  *See Weinstock v. Columbia Univ.*,

224 F.3d 33, 42 (2d Cir. 2000).  If Sarracco brings his claim as a hostile work environment

claim, as noted above, he must allege that (1) Luceno's conduct was objectively severe or pervasive, as based upon, for example, the conduct's frequency, severity, threatening and/or humiliating nature, and unreasonable interference with Sarracco's work performance; (2) Luceno created an environment that Sarracco subjectively perceived as hostile or abusive; and (3) Luceno created this environment because of Sarracco's sex.  *See Patane*, 508 F.3d at 113.  His claim fails under either theory.  At a minimum, Sarracco fails to:  (1) allege that he was qualified for the position of salesman; (2) characterize being placed "off the books" as an adverse employment action; (3) connect his alleged firing to his sex; (4) demonstrate that being placed "off the books" was objectively severe or pervasive discriminatory conduct—specifically, that such conduct was frequent rather than episodic, that it was threatening or humiliating in nature, or that it interfered with his work performance; or (5) demonstrate that he subjectively perceived it to be severe or pervasive.  Such bare pleading is insufficient to state a claim for sex discrimination.  Sarracco's NYSHRL claims must therefore be dismissed.

### D.    Leave to Amend

Leave to amend a complaint should be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  It is within the sound discretion of the district court to grant or deny leave to amend. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to amend, though liberally granted, may properly be denied for:  'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Amendment is futile when the claim as amended cannot "withstand a motion to dismiss pursuant to Rule 12(b)(6)," and "[i]n deciding whether an

amendment is futile, the court uses the same standard as those governing the adequacy of a filed pleading." *MacEntee*, 2011 WL 812395, at *8 (internal quotation marks omitted). Where the problem with a claim "is substantive . . . better pleading will not cure it," and "[r]epleading would thus be futile." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

In a letter to the Court and Plaintiffs dated April 12, 2010, Defendants identified several deficiencies in Plaintiffs' First Amended Complaint. (Doc. 11.) Namely, Defendants highlighted: (1) the legal implausibility of Castagna's retaliation claim based on a report filed after she quit, (*id.* at 2); (2) the lack of factual allegations to support Castagna's age discrimination claim, (*id.* at 3); (3) Castagna's failure to satisfy N.Y. Labor Law Section 215, (*id.*); (4) the untimely nature of Castagna's intentional tort claims, (*id.*); and (5) Sarracco's failure to allege a plan under ERISA, (*id.* at 4). At the April 27, 2010 pre-motion conference, the parties and the Court further discussed the deficiencies in the First Amended Complaint, including: (1) Title VII's prohibition on individual liability, (Fragale Decl. Ex. B, at 3); (2) Sarracco's "bald" claims of gender and age discrimination, (*id.* at 3–4); and (3) the lack of a connection between Sarracco's independent contractor status and discrimination law, (*id.* at 5). The Court gave leave to amend again and explicitly stated that it would not permit further amendments to the Complaint. (*Id.* at 7.) That Plaintiffs were provided notice of their pleading deficiencies and the opportunity to cure them is sufficient ground to deny leave to amend *sua sponte*. *See, e.g.*, *Ruotolo*, 514 F.3d at 191 (affirming denial of leave to amend "given the previous opportunities to amend"); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the

44

defendants and given a chance to amend their Consolidated Amended Complaint"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (plaintiffs "were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies") (citations and internal quotation marks omitted).  Moreover, Plaintiffs have not suggested in their Opposition papers that they are in possession of additional facts that would cure the deficiencies identified in this opinion.  Because the bases of the dismissals were raised prior to the most recent amendment or are substantive in nature—or both—leave to amend is denied.

## III.    CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  The remaining claims are:  (1) Castagna's Title VII hostile work environment claim, against Majestic only; (2) Castagna's NYSHRL hostile work environment claim; and (3) Sarracco's New York Labor Law claim.  All other claims are DISMISSED without leave to replead.  The Clerk of the Court is respectfully directed to terminate the pending motion. (Doc. 13.)  The parties are directed to appear before this Court for a conference on **Tuesday, May 31, 2011, at 10:00 a.m.**  A schedule for discovery will be discussed.  Counsel for Plaintiff Sarracco and for Defendants should also be prepared to discuss whether this Court should retain jurisdiction over Sarracco's state-law claim when all of his federal claims have been dismissed and there is no factual overlap between his surviving claim and Plaintiff Castagna's surviving claims, or whether his claim should be dismissed without prejudice to refiling in state court.

**SO ORDERED.**

Dated: April 26, 2011
      White Plains, New York

                                           CATHY SEIBEL, U.S.D.J.