UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PATRICIA CASTAGNA and NICK SARRACCO,

Plaintiffs,

- against -

BILL LUCENO and MAJESTIC KITCHENS, INC.,

Defendants.

**<u>OPINION AND ORDER</u>**

09 Civ. 9332 (ER)

---

<u>Appearances:</u>

E. Christopher Murray, Esq.
Ruskin Moscou Faltischek, P.C.
Uniondale, New York
*Attorney for Plaintiff, Patricia Castagna*

Constantino Fragale, Esq.
Law Office of Constantino Fragale
Eastchester, New York
*Attorney for Defendants, Bill Luceno*
  *and Majestic Kitchens, Inc.*

<u>Ramos, D.J.:</u>

Plaintiff Patricia Castagna ("Castagna")[1] brought suit against Defendants Bill Luceno

("Luceno") and Majestic Kitchens, Inc. ("Majestic," and collectively, the "Defendants"),

alleging, *inter alia*, that Defendants discriminated against her on the basis of her gender by

subjecting her to a hostile work environment in violation of Title VII of the Civil Rights Act of

1964 ("Title VII") and New York State Human Rights Law ("NYSHRL").[2]    Second Amend.

---

[1] The federal claims brought by plaintiff Nick Sarracco ("Sarracco") were dismissed by Order of the Honorable Cathy Seibel, to whom this case was previously assigned, on April 26, 2011 (the "April 26 Order"). Doc. 19. The Court subsequently declined to exercise pendent jurisdiction over Sarracco's state claim.

[2] In her Second Amended Complaint, Castagna also alleged an additional federal claim based on retaliation in violation of Title VII, as well as state law claims based on violations of New York Labor Law for failure to post employment policies in the workplace, and three separate violations of New York common law for intentional

Compl. ("SAC") ¶¶ 63, 77.   Defendants now move for summary judgment on Plaintiff's remaining claims.   Doc. 31.   For the reasons set forth below, Defendants' motion for summary judgment is GRANTED.

## I. Factual Background

The following facts are undisputed except where otherwise noted.[3]

Defendant Luceno is the owner and President of Majestic Kitchens.   SAC ¶ 6.   Castagna has known Luceno since before 2001, when her husband Joseph worked as a salesperson there. In approximately April 2005, when Joseph could no longer work due to illness, Luceno hired Castagna to work at Majestic.   Decl. of Constantino Fragale, Doc. 32, Ex. E ("Castagna Tr.") 33, 41.   At that time, Castagna and Luceno had been friends for at least nine years and she described their friendship prior to and during her employment at Majestic as "close."   Pl.'s 56.1 Stmt. ¶ 1. For example, Castagna explained that she and her husband often dined with Luceno and his wife at each other's homes, that she was in Luceno's wedding party, and that Luceno even paid their air fare to attend his wedding in California.   Castagna Tr. 34, 100-101.   Castagna also acknowledges that her husband, a long tenured Majestic employee, encouraged her to take the job with Luceno and that their preexisting friendship contributed to Luceno's decision to hire her.   Pl.'s 56.1 Stmt. ¶¶ 6-7.   In short, at the time that she began working at Majestic, Castagna "loved" Luceno and concedes that he harbored no animosity towards her.   *Id.* ¶¶ 3, 8.

---

infliction of emotional distress, assault and battery.   Second Amend. Compl., Doc. 12.   All of these claims were also dismissed by Judge Seibel in the April 26 Order.   Doc. 19.

[3] Pursuant to Local Rule 56.1(c), each factual statement set forth in Defendant's Rule 56.1 Statement "will be deemed to be admitted for purposes of this motion unless specifically controverted by a correspondingly numbered paragraph" in Plaintiff's Response to the Rule 56.1 Statement.   Where possible, the Court has relied on the undisputed facts in Defendant's 56.1 Statement; however, direct citations to the record have also been used where relevant facts were not included in either of the parties' Rule 56.1 submissions.   In analyzing the instant motion, the Court has disregarded averments in Plaintiff's 56.1 Statement that are not supported by citations to admissible evidence in the record, contradicted by other admissible evidence in the record, or that are conclusory legal arguments, such as, for example, Plaintiff's two "Statements of Disputed Facts."   Pl.'s 56.1 Stmt. ¶¶ 1-2, at 4-5.

**A.  Luceno's Treatment of Castagna**

In her deposition, Castagana testified that she loved her first six months at Majestic and that her relationship with Luceno was "great."  Castagna Tr. 60.[4]  She began to see another side of him, however, when she was reassigned to work in the reception area.  After her reassignment, Castagna alleges that she observed Luceno yell at, and demean, other Majestic employees and customers.

> I learned a lot by sitting by the reception desk.  A lot of stuff I didn't like.  A lot of yelling, harassing, calling people stupid.  If you had a—it was mostly women, if you had any size brain in your head and you care to use it you were not allowed at Majestic.  You were held back.  You were criticized.  You were—you learned to keep your mouth shut if you liked your job.  But sometimes a tirade would happen and you'd be sworn at, you'd be screamed at, humiliated, embarrassed and this is in front of customer and employees.  So I learned a lot in the next six months.

*Id.* 61-62.

It was approximately one year after Castagna started working at Majestic that Luceno began yelling at her, as well.  *Id.* 81-82.  Castagna testified that in 2006 and 2007 combined, Luceno yelled at her "maybe 15 times" using the same expletives that he had used with the other employees. *Id.* 83.  The language that she attributed to Luceno was indisputably coarse:

> Q.  Now, to the best memory permits, did he use any expletives when he yelled at you?
>
> A.  Yes.
>
> Q.  Can you please tell me what did he tell you?
>
> A.  "F-ing asshole.  Jesus Christ.  Shit.  Damn it.  What's wrong with you? Stupido."  Just over and over.  A variety, but over and over.

*Id.* 82.

---

[4] In her 56.1 Statement, Castagna purports to deny the clear, plain testimony she provided at her deposition concerning her first six months at Majestic.  Pl.'s 56.1 Stmt. ¶ 9.

The frequency of the verbal attacks directed at her also increased over time.  In 2008, she testified that Luceno yelled at her approximately twice a month, or approximately 14 times.  *Id.* 83.

> Q.  And again, what words did he use in 2008, the same as 2006 and 2007?
>
> A.  "Shut up.  You talk too much.  You pee too much.  Get back to your desk.  No, you can't leave your desk.  Stupid."  And swearing.  The same swearing.
>
> Q.  When you say the same swearing," are you referring to the same—
>
> A.  Yes.
>
> Q.  -- things you testified to?
>
> A.  Yes.

*Id*. 83-84.

### B.  Luceno's Treatment of Other Majestic Employees and Clients

As indicated above, Castagna alleges that Luceno's tirades were directed at "mostly women."  *Id.* 62.  She and other former Majestic employees testified to the verbal altercations Luceno had with Plaintiff, Celia Muff, Gail Goldman, and Linda Fabbri.  Specifically, Castagna estimated that during her three and one-half year tenure at Majestic she observed Luceno yell at Goldman and Fabbri approximately once a week, and Muff approximately a total of eight times.  *Id*. 69-72.  Luceno would call Muff, among other things, "F-ing son of a bitch," "stupid," and "ignorant."  *Id.* 75-76.  As to Goldman, who is Jewish, Luceno would refer to her as "F-ing Jew," or the "Hebe."  *Id*. 76.  He also called her "stupid," and referred to her as a "know-it-all."  *Id*. Jay Byrne, another former Majestic employee on whose testimony Castagna relies, also testified that Luceno referred to Goldman as "know-it-all Jewish bitch," in a conversation between

Luceno and Byrne.  Decl. of E. Christopher Murray, Doc. 36, Ex. D ("Byrne Tr.") 52.  With

respect to Fabbri, Castagna testified:

> I know she had some kind of kitchen degree, I don't think Bill has it and
> he said—"She thinks she's hot shit because she has this degree, it doesn't
> mean a damn thing or an F-ing thing."  And he would come out with all
> these criticisms.  But he would yell at her enough because of mistakes she
> might have made or something, but the way he did it was improper.  It was
> in front of everybody, in front of customers.  He just needs to take a
> course in handling people better.

Castagna Tr. 79.

However, while Castagna alleges that it was only the female employees of Majestic that

were subjected to Luceno's verbal abuse, she has submitted substantial evidence, including her

own testimony, tending to show that Majestic's male employees were not spared Luceno's

temper.  For example, Castagna testified concerning Luceno's treatment of coworkers Norman

Sussman and Paul:[5]

> Q.  Now, I would like to go back for a second to Norman and Paul.  How
> many times do you think he yelled at Norman during the course of your
> employment at Majestic?
>
> A.  I have no idea.
>
> Q.  If you had to approximate . . . what would you say?
>
> A.  I must have heard five times.  I—five times. I can't say any more.
>
> Q.  And what about Paul?
>
> A.  Ten times.
>
> *      *      *
>
> Q.  And can you tell me the specific words that he used with Paul, the
> cursing, the swearing, anything you can use at all?
>
> A.  The same thing over and over.  His vocabulary didn't change.

---

[5] Castagna could not remember Paul's last name.

Castagna Tr. 84-85.  Castagna also testified that Luceno referred to Sussman as "F-ing son of a

bitch," and used racial slurs because of Sussman's Jewish background.  *Id.* 67-68.  Celia Muff,

on whose deposition testimony Plaintiff relies, provided similar testimony:

> Q.  Do you recall whether there were any other specific employees that
> [Luceno] raised his voice to?
>
> A.  I think I have heard him raise his voice to just about everyone.
>
> *       *       *
>
> Q.  I believe that you were asked to whom Mr. Luceno would scream, and
> you said in your own words that he pretty much screamed at everybody; is
> that correct?
>
> A.  Yes.
>
> Q.  Is that an accurate reflection of what he did?
>
> A.  Yes.

Decl. of E. Christopher Murray, Doc. 36, Ex. B ("Muff Tr.") 19, 25.  Byrne also testified to

witnessing Mr. Luceno use derogatory language about Jews in the presence of Mike Rubenfeld, a

Jewish coworker,[6] and to refer to coworker Sarracco, an Italian American, as a "wise guy."

Byrne Tr. 15, 50.

Indeed, it appears that Mr. Luceno could not contain his temper even when it came to his

company's clients.  As Ms. Muff testified:

> A.  I would say that Mr. Luceno was very moody, and at times, you know, he
> might have been, you know, nice, and then at other times he might have been
> very agitated quickly just by maybe the smallest thing.
>
> *       *       *

---

[6] Byrne also testified that in private conversation he had with Luceno, Luceno referred to coworker Norman
Sussman as a "sloppy Jew;" that Sussman has established a good sales record by "play[ing] off the sloppy Jew
salesman."  Byrne Tr. 46.

> Q.  Would it be correct to say that he reflected this character trait towards his own clients?
>
> A.  Absolutely.

Muff Tr. 24-25; *see also id*. 18 (". . . I heard conversations of him screaming at clients."). Jay Byrne also testified to witnessing a confrontation between Mr. Luceno and a client which included yelling and the use of profanity. Byrne Tr. 39.

### C.  The July 2008 Incident

Castagna's last day at Majestic was July 9, 2008. On that day, Luceno asked Castagna to shorten her lunch period to half an hour each day that week because they were short-handed. Castagna Tr. 119-20. Castagna asked him for "comp" time in return and he became upset. *Id.* 120. Fifteen minutes later, after "building up steam," he went back to where Castagna sat, yelled at her and shoved her computer at her. *Id.* 120-21. Ms. Castagna feared for her safety and left. Later that day, she filed a police report about the incident with the Mamaroneck Police Department. *Id.* 116.

Plaintiff also points out that Mr. Luceno also had violent altercations with Celia Muff and Sonia Luceno, who, in addition to being Defendant's wife, is also a Majestic employee. In the case of Ms. Muff, Mr. Luceno yelled at her for failing to forward him an important call that he had been expecting.

> Q.  Was there a specific incident that caused you to leave your employment with Majestic?
>
> A.  Yes, there was.
>
> Q.  Can you tell us that happened?
>
> A.  Bill came into my office and he started screaming at me because he said that I didn't give him a message, and I didn't page him correctly, and he was waiting for the phone call. I said to him, you know, why didn't you tell me that that specific phone call that you really wanted to, you

> know, be located.  He just verbally abused me and just screamed his
> head off at me, and he put his finger in my face, and he cursed  at  me.
> It was very uncomfortable and it was very abusive, and verbally it was
> horrible, and the next day I decided to resign.
>
>            *      *      *
>
> Q.  At the time that he was screaming at you did you feel physically
> threatened?
>
> A.  Yes.
>
>            *      *      *
>
> Q.  What was the reason why you resigned?
>
> A.  Because I felt very threatened.  I was afraid.  I didn't want to go back.
> He was a bully.

Muff Tr. 14, 15, 16.  The incident with Mrs. Luceno involved Mr. Luceno throwing a coffee mug

against a wall close to her while in Majestic's Offices.  Decl. of E. Christopher Murray, Doc. 36,

Ex. C ("Luceno Tr.") 62-64.

    In sum, Plaintiff paints a clear picture of Mr. Luceno as an individual for whom, to put it

mildly, it can be rather unpleasant to work.  She and other former employees describe him as

rude, offensive and a "bully," and provide examples of interactions with him that certainly bear

out that description.

    It is also the case, however, that Luceno "raise[d] his voice and use[d] expletives when

interacting with employees irrespective of their gender, Defs.' 56.1 Stmt. ¶ 10,[7] and that Luceno

invited his employees to his home for parties regardless of gender.  Castagna Tr. 113.[8]  While

---

[7] While Castagna purports to deny this statement, Pl.'s 56.1 Stmt. ¶ 10, she, as well as Muff and Byrne—on whom she relies—testified in their depositions to the fact that Luceno yelled profanities at both male and female employees, as well as clients.

[8] Luceno also makes much of the fact that he personally made the decision to hire Castagna, as well as Muff, Goldman and many of Majestic's other female employees.  *See, e.g.*, Muff Tr. 8; Decl. of Constantino Fragale, Doc. 32, Ex. G ("Goldman Tr.") 8.  Thus, he suggests that no inference of discrimination should arise where the person accused of discrimination is the person who hired the plaintiff.  The "'same actor' inference, *though not irrelevant*,"

Plaintiff provides many examples of Luceno's coarse language, she points to no evidence that Luceno used overtly sexist language when addressing female employees directly. Pl.'s 56.1 Stmt. ¶ 10.[9]   In fact, Muff, who resigned from Majestic because she feared for her safety after Luceno's outburst, testified that she never heard him make a sexist remark in the five and one-half years she worked there.  Muff Tr. 11.

## II. Legal Standard for Summary Judgment Motions

### A.  General Summary Judgment Standard

Summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free School Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the relevant law.  *Id.*   The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "When the burden of proof at trial would fall on the

---

is also not sufficient in itself to justify summary judgment where the plaintiff has otherwise raised a genuine issue of material fact.  *Masters v. F.W. Webb Co.*, 03 Civ. 6280L, 2008 WL 4181724, at *6 (W.D.N.Y. Sept. 8, 2008) (emphasis added); *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 573 (6th Cir. 2003) ("the same-actor inference . . . is insufficient to warrant summary judgment for the defendant if the employee has otherwise raised a genuine issue of material fact").  Because the Court has determined that Plaintiff has not raised a genuine issue of material fact in this case, it will not rely on the "same actor" inference.

[9] The only evidence to which Plaintiff points as an example of Luceno using overtly sexist language is testimony that Luceno used the term "Jewish know-it-all bitch" to describe Gail Gordon to Byrne in a private conversation. Byrne Tr. 53.  The balance of Plaintiff's references in her Rule 56.1 Statement do not support her assertion that Luceno used overtly sexist language directly to female employees.  Though not included in Plaintiff's 56.1 Statement, the affidavit submitted by Sarracco similarly relates that Luceno described Goldman to Sarracco using an overtly vulgar sexist term.  Decl. of E. Christopher Murray, Doc. 36, Ex. A ("Sarracco Aff.") ¶ 11.

nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 322-23).

The burden then shifts to the party opposing summary judgment to present evidence that is sufficient to satisfy every element of the claim and "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. 317 at 324 (quotation marks omitted). "Summary judgment is properly granted when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (quoting *Celotex Corp.*, 477 U.S. at 322).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving part may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  A motion for summary judgment cannot be defeated on the basis of mere denials or unsupported alternative explanations of facts.  *Senno*, 812 F. Supp. 2d at 467.  The non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'" *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), "[she] must set forth significant, probative evidence on which a reasonable fact-finder could decide in [her] favor."  *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256-57 (1986)).

### D.  Additional Summary Judgment Standards for Employment Discrimination Cases

Courts are cautious in granting summary judgment in employment discrimination cases where the employer's intent is at issue, *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008); however, "'[s]ummary judgment is appropriate even in discrimination cases, for . . . the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to other areas of litigation.'" *Hongyan Lu v. Chase Inv. Serv. Corp.*, 412 F. App'x 413, 415 (2d Cir. 2011) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *superseded by statute on other grounds as stated in Ochei v. Coler/Goldwater Mem'l Hosp.*, 450 F. Supp. 2d 275, 282 (S.D.N.Y. 2006)).  Indeed, "'[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.'" *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001)).  Furthermore, "[e]ven in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb,* 521 F.3d at 137; (citing *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)).  A "nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'"  *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)).

"[S]ummary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. There must either be a lack of evidence in support of the plaintiff's position, or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Sys. Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (internal citations omitted).  "Nonetheless, when an employer provides convincing evidence to explain its conduct and the plaintiff's argument

consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer." *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 493 (S.D.N.Y. 2010) (citation omitted); *see also Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997) (same); *Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995) (same).

## III. Discussion

Title VII provides, in relevant part:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. §§ 2000e-2(a)(1). "The phrase terms, conditions, or privileges of employment evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)) (internal quotation marks omitted). The kinds of workplace conduct that may be actionable under Title VII include unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature. *Meritor*, 477 U.S. at 65.

### A. Plaintiff Has Failed to Establish That Defendants Created A Hostile Work Environment

"In order to establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gorzynski v. JetBlue*

*Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)).   Moreover, for sexual harassment to be actionable in the context of an allegation of a hostile work environment, the harassment must be sufficiently severe or pervasive—both subjectively and objectively—"to alter the conditions of [the victim's] employment and create an abusive working environment."   *Meritor*, 477 U.S. at 67; *see also Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (the test for establishing a hostile work environment "has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive.")   To establish objective and subjective hostility, "a plaintiff need not show that her hostile working environment was both severe *and* pervasive; only that it was sufficiently severe *or* sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions."   *Pucino v. Verizon Commc'ns, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010) (emphases in original); *see also Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (race discrimination); *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 n.1 (1998) (standards for what amounts to actionable abuse are the same for racial and sexual harassment).

In considering whether a plaintiff has met this burden, courts should "examin[e] the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance."   *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003) (quotation marks omitted).   "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances."   *Harris*, 510 U.S. at 23.

Isolated incidents usually will not suffice to establish a hostile work environment, although it has been held that even a single episode of harassment can establish a hostile work environment if the incident is sufficiently "severe."   *E.g., Pucino*, 618 F.3d at 119; *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010); *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998), *abrogated in part on other grounds by National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Torres v. Pisano*, 116 F.3d 625, 631 n. 4 (2d Cir. 1997), *cert. denied*, 522 U.S. 997 (1997).

Individual incidents, however, must not be viewed in isolation.  In assessing the evidence to determine whether a rational juror could infer that a reasonable employee would have found the abuse so pervasive or severe as to alter her working conditions, "especially in the context of a claim of sexual harassment, where state of mind and intent are at issue, the court should not view the record in piecemeal fashion."  *Kaytor*, 609 F.3d at 548 (internal quotation marks and citation omitted).  "The objective hostility of a work environment depends on the totality of the circumstances," viewed from "the perspective . . . of a 'reasonable person in the plaintiff's position, considering all the circumstances [including] the social context in which particular behavior occurs and is experienced by its target.'"  *Petrosino v. Bell Atl.*, 385 F.3d 210, 221 (2d Cir. 2004) (quoting *Oncale v. Sundower Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

Nonetheless, while "the central statutory purpose [of Title VII was] eradicating discrimination" in employment, *Franks v. Bowman Transp. Co., Inc.*, 424 U.S. 747, 771 (1976), Title VII "does not set forth 'a general civility code for the American workplace.'"  *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, (2006) (quoting *Oncale*, 523 U.S. at 80).  In *Oncale*, the Court noted that "conduct that is not severe or pervasive enough to create an

objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview."  523 U.S. at 81 (quoting *Harris*, 510 U.S. at 21).  The Court noted that it regarded the objective component both as "crucial[ ] and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace for discriminatory 'conditions of employment.'" *Id.*

Construing the facts in the instant case in the light most favorable to Plaintiff as the non-moving party, and resolving all ambiguities and drawing all reasonable inferences against the Defendants, and looking at the record as a whole, the incidents that Plaintiff cites, while rude and inappropriate, are insufficient to establish an *objectively* hostile work environment.  Indeed, as Plaintiff acknowledges, Luceno yelled at both male and female employees and used the same offensive language when he did so, thereby undermining any claim that these comments are actionable under Title VII.  *See Beale v. Mount Vernon Police Dept.,* --- F. Supp. 2d ---, 07 Civ. 7520 (KMK), 2012 WL 4473282 (S.D.N.Y. 2012) (finding no Title VII sexual harassment violation where defendant yelled at both male and female employees in similar circumstances); *Alfano*, 294 F.3d at 380 (affirming summary judgment for defendant, in part, on conclusion that several statements lacked "any sexual overtone"); *O'Neal v. State Univ. of N.Y.*, CV-01-7802 (DGT), 2006 WL 3246935, at *7 (E.D.N.Y. Nov. 8, 2006) (holding that several instances of rude, but gender-neutral behavior by supervisor were insufficient to establish a hostile work environment); *Lucenti v. Potter*, 432 F. Supp. 2d 347, 362 (S.D.N.Y. 2006) ("Allegations of even constant reprimands and work criticism by themselves are not sufficient to establish a hostile environment claim."); *Curtis v. Airborne Freight Corp.*, 87 F. Supp. 2d 234, 250 (S.D.N.Y. 2000) (noting that Title VII "does not reach so far as to protect plaintiffs from undiscriminating intimidation by bullish and abusive supervisors").

To be sure, Plaintiff has established that Luceno is an individual with an unhealthy temper and ran Majestic in a manner that was at times disrespectful in the extreme.   There can also be no doubt that the words he used when he berated her were offensive and humiliating. Plaintiff was certainly correct when she suggested in her deposition that Luceno "needs to take a course in handling people better."  Castagna Tr. 79.  But as one court has noted, a "'hostile' work environment is not synonymous with an unpleasant, harsh, combative or difficult work environment.  The nation's workplace is most likely populated with abusive, banal, profane and vulgar supervisors" and co-workers who use "insensitive, profane and vulgar language."  *Benette v. Cinemark, USA, Inc.,* 295 F. Supp. 2d 243, 250 (W.D.N.Y. 2003); *see also Urban v. Capital Fitness*, CV 08-3858 (WDW), 2010 WL 4878987, at *8 (E.D.N.Y. Nov. 23, 2010) (same).  That alone, however, is not enough to make out a hostile work environment claim.  *Id.*

In reaching this conclusion, the Court has also considered, as it must, the deposition testimony proffered by the Plaintiff of incidents of abuse against other male and female employees, not witnessed by the Plaintiff, in its consideration of the hostile work environment claim.  *See Capital Fitness,* 2010 WL 4878987, at *6 (finding it appropriate to consider alleged discriminatory behavior not observed by plaintiff but supported by sworn testimony from a person with first-hand knowledge).

**B. Plaintiff Has Failed to Establish That She Was Discriminated Against on Account Of Her Gender**

It is axiomatic that Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination because of sex, or some other protected characteristic.  *See Oncale*, 523 U.S. at 80; *see also Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (same); *Pucino*, 618 F.3d at 117 (in assessing the "totality of the circumstances" offered to prove a hostile work environment, a fact-finder may consider only abusive conduct

proven to be "based on sex"). This may be proven by "'harass[ment] in such sex-specific and derogatory terms . . . [as] to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace,'" *Raniola v. Bratton*, 243 F.3d 610, 621 (2d Cir. 2001) (alteration in original) (quoting *Oncale*, 523 U.S. at 80), or by offering "some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory." *Alfano*, 294 F.3d at 378. A plaintiff may rely on incidents of sex-based abuse to show that other ostensibly sex-neutral conduct was, in fact, sex-based. *See Raniola*, 243 F.3d at 621-22; *see also Howley,* 217 F.3d at 156 (holding that a rational jury could infer that facially-neutral abuse was sex-based because perpetrator had previously made several sexually-derogatory statements).

"[T]he question of whether considerations of the plaintiff's sex 'caused the conduct at issue often requires an assessment of individuals' motivations and state of mind.'" *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 178 (2d Cir. 2012) (quoting *Kaytor*, 609 F.3d at 548). Issues of causation, intent, and motivation are questions of fact. *See, e.g.*, *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985); *Pullman–Standard v. Swint*, 456 U.S. 273, 287–90 (1982). Although summary judgment in discrimination cases should be used "sparingly," it is nevertheless "fully appropriate, indeed mandated, when the evidence is insufficient to support the non-moving party's case . . . as is often the case in sexual harassment claims, [when fact questions such as] state of mind or intent are at issue." *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 61 (2d Cir. 1998); *see also Kaytor*, 609 F.3d at 548 (same); *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 605 (2d Cir. 2006) (same).

Likewise, "[t]he question of whether a work environment is sufficiently hostile to violate Title VII is one of fact." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 75 (2d Cir. 2001); *see also Schiano*, 445 F.3d at 605 ("the line between boorish and inappropriate behavior and

actionable sexual harassment . . . is admittedly indistinct, [and] its haziness counsels against summary judgment") (internal quotations omitted). The interpretation of ambiguous conduct is "an issue for the jury." *Gallagher v. Delaney*, 139 F.3d 338, 347 (2d Cir. 1998), *abrogated on other grounds as stated in Walia v. Vivek Purmasir & Assocs., Inc.*, 160 F. Supp. 2d 380, 387 n.5 (E.D.N.Y. 2000).

As noted, the vast majority of the evidence proffered by Plaintiff consists of episodic[10] tirades by Luceno against female *and* male employees *and* customers. While Plaintiff now purports to deny that Luceno berated his employees indiscriminately, her testimony was clear that Luceno yelled at everyone and used similar language. Castagna Tr. 85 ("His vocabulary didn't change."); Muff Tr. 19, 25:

> Q. Do you recall whether there were any other specific employees that [Luceno] raised his voice to?
>
> A. I think I have heard him raise his voice to just about everyone.
>
> *       *       *
>
> Q. I believe that you were asked to whom Mr. Luceno would scream, and you said in in your own words that he pretty much screamed at everybody; is that correct?
>
> A. Yes.

In her opposition to the instant motion, Plaintiff has submitted the affidavit of Sarracco wherein he avers that "[Luceno] never yelled at me, nor did I see him yell at any of the other male employees, especially not in the threatening manner that he yelled at the female employees." Sarracco Aff. ¶ 13. The Second Circuit has held under similar circumstances that "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are

---

[10] Castagna testified that, prior to the incident on July 9, 2008, she always received apologies from Luceno after his outbursts. Castagna Tr. 104, 169-170, 171, 172. She also acknowledged that she found her working conditions intolerable only on "some days," *id.* 107, and that she was otherwise able to "tolerate" Luceno. *Id.* 106.

not 'genuine' issues for trial." *Hayes v. N.Y. City Dept. of Corr.,* 84 F.3d 614, 619 (2d Cir. 1996) (quoting *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)). In this case, tellingly, Plaintiff does not cite to her own testimony to support the proposition that Luceno only behaved improperly toward women employees.   Accordingly, Mr. Sarracco's testimony in that regard will not be considered.[11]

The only evidence of gender-specific derogatory utterances was the testimony that Luceno referred to Gail Goldman as a "know-it-all Jewish bitch" in a conversation between Luceno and Byrne, Byrne Tr. 52, as well as Sarracco's affidavit wherein he relates that Luceno described Goldman to him using an overtly vulgar sexist term.  Sarracco Affidavit ¶ 11.  It is unclear from the record, however, whether those were isolated acts, or whether Luceno described Goldman similarly to Byrne and Sarracco on multiple occasions, or whether he described her similarly to employees other than Byrne and Sarracco.   However, as a matter of law, a supervisor's occasional use of sexist language does not create a hostile work environment. *See, e.g.*, *Harris,* 510 U.S. at 21 ("'mere utterance of an . . . epithet which engenders offensive feelings in an employee' . . . does not sufficiently affect the conditions of employment to implicate Title VII" (quoting *Meritor*, 477 U.S. 57, 67 (1986)); *Petrosino*, 385 F.3d at 223 (noting that "isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment"); *Augustin v. Yale Club of N.Y.*, 03 Civ. 1924 (KMK), 2006 WL 2690289, at *21-22 (S.D.N.Y. Sept. 15, 2006) (co-workers' use of phrases including "fucking negrita" and "black bitch" to refer to plaintiff not sufficient to create hostile work environment); *Garone v. United Parcel Serv.*, 436 F. Supp. 2d 448, 469 (E.D.N.Y. 2006)

---

[11] Even if the Court were to consider it, however, Plaintiff's claim would still fail for the reasons set forth in Section III.A—namely, that even assuming that Luceno directed all his anger at his female employees, the incidents described would still not amount to an objectively hostile work environment.

(supervisor's use of the phrases "office bitch," and "Brooklyn bimbette" did not create hostile work environment), *aff'd*, 254 F. App'x 108 (2d Cir. 2007); *Stepheny v. Brooklyn Hebrew Sch. for Special Children*, 356 F. Supp. 2d 248, 264 (E.D.N.Y. 2005) (co-worker's use of the phrase "white bitch" or some variation thereof five times over a five month period did not create racially hostile work environment); *Pagan v. N.Y. Div. of Parole*, 98 Civ. 5840 (FM), 2003 WL 22723013, at *6 (S.D.N.Y. Nov. 18, 2003) (supervisor's use of racially derogatory language on four occasions did not create racially hostile work environment); *see also Pucino,* 618 F.3d at 118 (rejecting a rule that would automatically command an inference of gender-based hostility to be drawn from the use of the word "bitch"). "Although [such] comments are despicable and offensive, they fail to constitute discriminatory behavior that is sufficiently severe or pervasive to cause a hostile environment." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 713 (2d Cir. 1998).

While Plaintiff does assert that she believes Luceno was motivated by a hatred of women, Castagna Tr. 87-88, and proffered the deposition of Ms. Muff who testified that she had a "general gut feeling" that Luceno harbored animosity towards women,[12] Muff Tr. 45-46, such purely conclusory allegations of discrimination do not suffice to defeat a motion for summary judgment. *Walder,* 738 F. Supp. 2d at 493.

### C.  "Constructive Termination"

As Judge Seibel noted in her April 26 Order, Doc. 19, Plaintiff does not include a separate count in the Second Amended Complaint based upon constructive discharge but found that, to the extent that it can be read to assert such a claim, it satisfied the plausibility standard for a constructive discharge claim.  Doc. 19 at 19 n.6.  Such a claim, if asserted, would also fail to survive summary judgment.  Where an alleged constructive discharge stems from an alleged

---

[12] Muff also testified that she never heard Luceno utter a sexist remark.  Muff Tr. 11.

hostile work environment, a plaintiff "must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010) (quoting *Pa. State Police v. Suders,* 542 U.S. 129, 147 (2004)). This standard is higher than the standard for establishing a hostile work environment. *Id.* Because Castagna failed to establish a hostile work environment, her claim of constructive discharge also fails.

### D. The NYSHRL Claim

Where, as here, all federal law claims are eliminated before trial, the "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction over any remaining state law claims. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Having dismissed the sole remaining federal claims asserted in the Second Amended Complaint, the Court declines to exercise supplemental jurisdiction over Plaintiffs' NYSHRL claim. 28 U.S.C. § 1367(c)(3).

## IV. Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED. The Clerk of the Court is respectfully directed to terminate the pending motion, Doc. 31, and enter judgment in favor of Defendants.

SO ORDERED.

Dated:    February 4, 2013
          White Plains, New York

                                        _____
                                        Edgardo Ramos, U.S.D.J.